[Birmingham Warehouse & Elevator Co. v. Elyton Land Co.]

but rather to strengthen it. But the return goes further than this. It not only asserts that service was made upon Jack Veasey, thus raising the presumption that the person served was the person sued, but it affirms that "Jack Veasey" is the defendant in the cause, and designated therein by the name of A. J. Veasey. We have no hesitation in reaching the conclusion that service was upon A. J. Veasey, the defendant, and that upon his failure to appear, judgment by default was properly entered against him.

Affirmed.

# Birmingham Warehouse & Elevator Company *v.* Elyton Land Company.

*Bill in Equity by Purchaser, for Rescission of Contract of Sale.*

1. *Demurrer as admission.*—A demurrer to a bill admits all material facts which are well pleaded, but not conclusions of law, nor inferences of facts; and the averments of the bill, on demurrer, are construed most strongly against the pleader.

2. *Representations by vendor, as to proposed location of railroad near lands.*—A representation or statement by the president of a land company, acting as its agent in negotiating a sale of lots to a purchaser, whose business, as he informed the agent, required close connection with the several railroads in the city, in these words, "We are building our belt railroad down this street, so that it will pass within 500 feet of" said lots; "we are now working on it, and the engineers are now out there at work,"—does not amount to a promise or engagement that the railroad would be completed and located on that street; and if it amounted to such promise or engagement, the failure to perform it would not authorize a rescission of the contract at the suit of the purchaser, unless the statement was "made fraudulently and falsely with the intent to deceive."

APPEAL from the Chancery Court of Jefferson.

Tried before the Hon. THOMAS COBBS.

The bill in this case was filed on the 11th April, 1889, by the appellant corporation against the Elyton Land Company, and sought the rescission of a contract for the purchase by the complainant, from the defendant, of two blocks of land in Birmingham. The contract for the sale and purchase of the property was made on the 9th March, 1887, and was negotiated by and between J. A. VanHoose, acting as agent and trustee for himself and associates, who proposed and intended to organize the appellant corporation, "to erect and operate ware-

[Birmingham Warehouse & Elevator Co. v. Elyton Land Co.]

houses and elevators for the purpose of receiving, handling and storing grain and other wares and merchandise," and desired to purchase lands suitable for those purposes; and Dr. H. M. Caldwell, who was then the president of the Elyton Land Company, and acted as it agent in negotiating sales of land. The agreed price for the land was $50,000, of which $5,000 was paid in cash by the purchasers, and their promissory notes, nine in number, given for the balance. The allegations of the bill, as to the grounds on which a rescission of the contract was prayed, are copied in the opinion of this court, and it is unnecessary to repeat them. The chancellor sustained a demurrer to the bill, on these grounds: (1.) "The alleged representations of Caldwell do not constitute any fraud on complainant which entitles it to a rescission." (2.) "Said representations of Caldwell are mere expressions of opinion." (3.) "The bill does not allege that said representations were untrue." (4.) "The bill does not allege that Caldwell knew, or had reason to believe, that said alleged representations were untrue."

The decree sustaining the demurrer is assigned as error.

GARRETT & UNDERWOOD, for appellant, cited *Montgomery So. Railway Co. v. Matthews*, 77 Ala. 357; *Nelson v. Wood*, 62 Ala. 175; *Lindsey v. Veasey*, 62 Ala. 421; *Brown v. Freeman*, 79 Ala. 409; *Flewellen v. Crane*, 58 Ala. 627; *Tabor v. Peters*, 75 Ala. 95; *Davis, Moody & Co. v. Betz & Cullman*, 66 Ala. 210; *Donelson v. Weakley*, 3 Yerger, Tenn., 178; *Lewis v. McLemore*, 10 Yerger, 206; *Smith v. Richards*, 13 Peters, 37; *McFerran v. Taylor*, 3 Cranch, 270; *Anderson v. Hill*, 51 Amer. Dec. 130; *Parkham v. Randolph*, 35 Amer. Dec. 403; *Johnson v. Jones*, 13 Sm. & Mar. 582; *Morrill v. Blackman*, 42 Conn. 324; *Eaton v. Avery*, 83 N. Y. 31; *Durell v. Hale*, 1 Paige Ch. 492; *Deaderick v. Mitchell*, 6 Baxter, Tenn. 35; Bigelow on Fraud, 412, note 1; Cooley on Torts, ed. 1879, 474; 1 Story's Equity, § 186; 2 Pom. Equity, §§ 887–8; 5 Amer. & Eng. Encyc. Law, 335, note 3.

A. T. LONDON, *contra.*—(1.) The demurrer only admitted the facts which were well pleaded, and neither conclusions of law nor inferential facts were well pleaded.—*Cockrell v. Gurley*, 26 Ala. 405; *Flewellen v. Crane*, 58 Ala. 627; *Duckworth v. Duckworth*, 35 Ala. 70; *Bercy v. Lavaretta*, 63 Ala. 374; *Jones v. Latham*, 70 Ala. 164; *Chamberlain v. Dorrance*, 69 Ala. 40. (2.) The alleged statements of Caldwell, if relied on as a contract, could not be established by parol evidence; and they did not constitute a fraud, nor authorize a rescission

of the contract, unless falsely and knowingly made with intent to deceive.—*Pierce v. Wilson*, 34 Ala. 596; *Griel v. Lomax*, 89 Ala. 427; Bigelow on Fraud, 483, 476; 135 Mass. 75; 5 Amer. & Eng. Encyc. of Law, 325, 334–5.

COLEMAN, J.—Complainant's bill is filed to obtain the rescission of a contract upon the ground of misrepresentations.

On the 9th of March, 1887, James S. VanHoose and others, desiring to organize a corporation to be known as the Warehouse & Elevator Company, purchased from the defendant two blocks, numbered 210 and 427, in the city of Birmingham, which fronted north on 8th Avenue 800 feet, and were bounded on the east 500 feet by 29th Street. They paid five thousand dollars in cash, and, after the organization of the company in accordance with the terms of the purchase, its notes, nine in number, each for $5,333.27, were executed for the balance of the purchase-money. Bonds for title were made to Van-Hoose, in trust, to be transferred by him to the warehouse company, and which was done when it was organized as a corporation. The purchase of the blocks was effected through H. M. Caldwell, the president of the Elyton Land Company, who then had charge and control of the sales of the land of said company. The representations made by H. M. Caldwell, as averred in the bill, and which are relied upon as the grounds of relief, are as follows: "That VanHoose made known to Caldwell their desire and intention to organize the Birmingham Warehouse & Elevator Company, and desired to purchase a tract of land suitable for such business, and wanted and required a location where they could have connection with all the railroads entering into the city of Birmingham, and if they could secure such a location from the Elyton Land Company, they would at once organize the corporation and purchase the location;" that thereupon "Caldwell pointed out blocks 210 and 427, on a map, and recommended them as specially suited for that purpose, and in order to induce said VanHoose and associates to purchase the same for their proposed corporation, stated and declared to VanHoose the following facts, which were peculiarly and solely within the knowledge of said Elyton Land Company, its officers and servants: 'I will tell you something I have not told any one else, and what is not generally known. We are building our belt railway right down 29th Street, so that you see we will pass that ground 500 feet on its East side, and we can turn it down all along the 8th Avenue front.' Then VanHoose asked Caldwell how long it would be before the belt railroad would be completed past blocks 210 and 427; and the said Caldwell answered, 'We

are at work on it now, the engineers are out there now at work on it.'" These are the representations of facts, as stated in the bill, made by Caldwell to VanHoose, which induced the purchase, and without which, it is alleged, the purchase would not have been made. The bill avers that the belt road was not, and never has been completed along said block on 29th Street, and that a belt road connecting with the railroads was necessary for the business of the company, and without it the business could not be carried on successfully. The bill avers that, "relying upon the statement, assurances and promises of the said Caldwell that the belt road was being built, and would be completed, as it had originally agreed to do when it sold the land," blocks 210 and 427 were purchased, and the company organized.

A demurrer to a bill admits all material facts well pleaded, but a demurrer does not admit conclusions of law, or inferences of facts.—*Flewellen v. Crane*, 58 Ala. 627; *Cockrell v. Gurley*, 26 Ala. 405; *Duckworth v. Duckworth*, 35 Ala. 70. Upon demurrer, in determining whether a fact is averred or not, the bill will be construed most strongly against the pleader; for the presumption is, that material facts, not averred, do not exist.—*Jones v. Latham*, 70 Ala. 164; 63 Ala. 374; *Reed v. Overall*, 39 Ala. 142. The bill does not aver that the engineers were not at work at the time and place, and for the purpose as represented by Caldwell, or that the statements to this effect were not true; and under the influence of the foregoing rules, we must presume they were true. The averment that complainants relied upon the "assurances and promises of Caldwell to complete the belt road, *as he agreed to do* at the time he sold the land," will not supply a failure to aver facts necessary to constitute an assurance or promise to complete the road. The statement of facts contained in the bill does not authorize the conclusion averred, as they do not show a promise or agreement on the part of the defendant to *complete* the belt railroad down 29th Street alongside of blocks 210 and 427. If the facts averred constituted an agreement to build the belt road, plaintiff's relief for breach of contract would not lie in the present form of action, under the facts alleged in the bill. We do not wish to be understood as holding, that a promise or agreement in parol could be proven, if one had been averred, without other and further averments which are lacking in the bill.

The next proposition is, whether the statement by Caldwell, "We are building our belt railway right down 29th Street, so that you see we will pass that ground 500 feet on its East side," coupled with the further statement, "We are at work on it

[Birmingham Warehouse & Elevator Co. v. Elyton Land Co.]

now, the engineers are out there now at work on it," belong to that class of statements and representations which will authorize a court of equity to rescind a contract upon proof merely that the road was not completed, as complainants inferred it would be, or whether the statement was of the class that must be averred to have been fraudulently and falsely made with the intent to deceive.

We must presume the engineers were at the time at work on the belt railway, as this averment is not negatived. The further completion of the road, until it extended along blocks 210 and 427, was something to be performed in the future. In the case of the *Montgomery So. Railway Co. v. Matthews*, 77 Ala. 357, suit was brought upon promissory notes given for subscription to assist in building a railroad. Special pleas were interposed, which set up as a defense that Kilpatrick, who was plaintiff's agent, represented to the defendants that the railroad would be built to Rutledge within two years at farthest from the date of the note, and relying on these representations to be true, they executed the notes, and that the road was not built, and the representations were false, &c. In passing upon the sufficiency of these pleas, this court held, "the representations set forth in the pleas relate to matters afterwards to be performed, and could be nothing but opinion;" that the pleas were fatally bad, because they did not aver that Kilpatrick did not honestly entertain the opinion he expressed.

In the case of *Bradfield v. Elyton Land Co.*, ante, p. 527, the bill averred that Caldwell represented that the "belt line was located on 10th Avenue, and was then being built and operated as a permanent road, and that such representation amounted to an engagement, and formed part of the consideration for the purchase of the lots." This court held, that, if the representations to build and operate permanently the belt road on 10th Avenue "amounted to an engagement," being in parol, it was obnoxious to the statute of frauds. Furthermore, that if Caldwell represented that it would be permanently operated in the future, without an agreement to that effect, the representation "consisted in opinion;" and that, to be the basis of a legal right, must be knowingly false, and uttered with intent to deceive. In the case of *Lawrence v. Gayety*, 78 Cal. 126; 12 St. Rep., the court declared that "the representations alleged to have been made are not as to existing facts, but consist in mere promises to perform certain acts in the future. The rule is, that representations, to constitute sufficient grounds for relief, must be as to existing, material facts, or the affirmation of a matter in the future as a fact, and not

[Winston v. Mitchell.]

a mere opinion, statement of intention, or promise to do some act in the future;" quoting among others Pom. Eq. §§ 877, 888. A promise, strictly speaking, is not a representation. The failure to make it good may give a cause of action, but it is not a false representation, which will authorize the rescission of a contract like the present. The making of a promise, and' having no intention at the time of performing it, constitutes a fraud for which a contract may be rescinded.—12 St. Rep., *supra*. The rule laid down in *Montg. So. Railway Co. v. Matthews*, 77 Ala. 357, *supra*, and followed in *Bradfield v. Elyton Land Co., supra*, as to promises and acts to be performed in the future, is abundantly sustained, both by text-books and numerous decisions in other States.—Pom. Eq. Jur. §§ 877, 888; 78 Cal., *supra; Williams v. McFadden*, 20 Fla. 143; *Hexter v. Bast*, 125 Penn. St. 52; 7 Am. St. Rep. 202, note on page 216; *Adams v. Schiffer*, 11 Cal. 15; *McLain v. Buliner*, 4 Amer. St. Rep. 36, note on page 41; *Knowlton v. Keenan*, 146 Mass. 86; *Chatham Furnace Co. v. Moffatt*, 9 St. Rep. 727, and note, pp. 729–30; 128 Ill. 9; 15 Am. St. Rep. 90, and note; *Griel v. Lomax*, 89 Ala. 427; *Dowe v. Morris*, 149 Mass. 188; *Atwood v. Wright*, 29 Ala. 346; 14 Amer. St. Rep. 404.

The failure of the bill to aver that the representations by Caldwell were false and fraudulently made, with intent to deceive, or some equivalent of such averments, renders it fatally defective, and subject to demurrer.

Affirmed.