CORAL GABLES CORPORATION *v.* HAMILTON *et al.;*
*et vice versa.*

Nos. 6620, 6645.   February 23, 1929.

*O. W. Russell, Bryan & Middlebrooks* and *A. J. Orme,* for plaintiff in error.

*Alston, Alston, Foster & Moise, Candler & Candler, Jones, Evins, Moore & Powers, Herbert J. Haas, Albert E. Mayer,* and *Horton Brothers & Peck,* contra.

RUSSELL, C. J.   (After stating the foregoing facts.)

We are of the opinion that the court did not err in overruling the motion to dismiss, based upon the ground that the court was without jurisdiction.   It may suffice to say that under the provisions of our Civil Code (1910), § 5055, non-residence of a defendant is one of the grounds of attachment; and under the provisions of section 5102 the plaintiff in attachment is required to file a declaration at the term succeeding the levy of the attachment, which is, for the purpose of the proceedings, in a sense the appearance term of the case.   Under the provisions of the uniform procedure act of 1887 (§ 5406), one who is proceeding in any action at law may avail himself in the superior court of any equitable remedy which is more expedient or efficacious than the processes of law, and may avail himself of equitable remedies not only to avoid circuity of action and a multiplicity of suits, but he may also invoke the extraordinary remedies afforded by courts of chancery in order to preserve his rights by maintaining the status of all tangible assets of his debtor to be found within the jurisdiction of the court, until the rights of the petitioner can be determined.

Treating the petition in this case as the filing of the petition required by section 5102 in cases of attachment, without regard to the ground upon which the attachment is based, the petitioners had the right to file an equitable petition ancillary to the proceeding by attachment. Section 5102 is as follows: "When the attachment has been returned to the proper court, the subsequent proceedings shall be in all respects the same as in cases where there is personal service; and when the attachment is returnable to the superior or county court, the plaintiff shall file his declaration at the first term." Conceding that a declaration in attachment, like any other petition, must show the jurisdiction of the court, and though the petition in the present instance alleges that the Coral Gables Corporation is not a resident of this State, all of the facts stated in the petition show that the main purpose of the petitioners in attachment is to obtain a judgment in rem against property and money alleged to be within the jurisdiction of the court and in the hands of certain named persons and corporations resident and doing business in the State of Georgia. The declaration shows upon what property or funds the judgment is to operate. The prayer is for an equitable attachment.

It is now well settled that citizens of this State will not be required to pursue their rights in foreign forums, when there is property of a non-resident within this State and subject to the jurisdiction of its courts, which supplies a res available to the courts which will enable them to administer justice. As said in 15 R. C. L. 632, § 75, "The seizure of property by a court, required in order to confer jurisdiction to enter a judgment in rem in reference to it, in the absence of personal service on the parties having interests therein, is usually by writ of attachment; but it is immaterial whether the proceeding against the property be by an attachment or bill in chancery or other equivalent, if it be substantially a proceeding in rem." Where an award against property specifically described is sought, the proceeding has generally been regarded as one quasi in rem, so as to give the court jurisdiction against the property which is itself within the jurisdiction of the court. In the petition now before us there is a sufficiently specific designation of the property sought to be reached by process of garnishment, and each of the garnishees appears to have been personally served. In support of the proposition that equi-

table proceedings may be resorted to in subjecting property of a non-resident to just demands against him, the decision in Pennington *v.* Fourth National Bank, 243 U. S. 269 (37 Sup. Ct. 282, 61 L. ed. 713, L. R. A. 1917F, 1159), can well be cited. In that case it was held that an injunction restraining a bank joined as defendant from paying out any part of the deposit standing in the name of the husband was a sufficient seizure to support a judgment ordering the payment of the balance to the wife, although the husband was a non-resident, was not served within the State, and did not appear. The court said: "The objection that this proceeding was void, because there was no seizure of the res at the commencement of the suit, is also unfounded. The injunction which issued against the bank was as effective a seizure as the customary garnishment or taking on trustee process. Such equitable process is frequently resorted to in order to reach and apply property which can not be attached at law." As already stated, there are many cases in which the law by reason of its universality can not supply a remedy as appropriate or as efficient as those within the power of courts of equity; and therefore this petition properly asked the application of equitable principles in subjecting to the demands of the petitioners the property alleged to be in the hands of the other defendants named in the petition.

■ It can not be said that the petition is subject to general demurrer for the reason that it sets out no cause of action against the defendant. According to their allegations, the petitioners were the victims of fraudulent representations which induced them to part with several thousand dollars for nothing but a few square feet of ground in and on the banks of an alluvial swamp. The defendant corporation through its agents (if the allegations of the petition be true) were guilty of frauds of several kinds which subjected them to the liabilities imposed by the shortest section of the Code, which declares that "fraud voids all contracts." They purchased land which is valueless unless it is supplied with all of the modern conveniences and luxuries which were held before their eyes to induce them to purchase. Yet even upon this piece of primeval earth 50 feet by 100 feet they were forbidden to build a habitation costing less than the many thousands of dollars stipulated in the contract, even though they be supplied with none of the conveniences which were stipulated to be supplied, such as

paved streets and sidewalks, facilities of rapid transit, electric lights, and water. · It is so well settled that a petition which is amendable will withstand a general demurrer, and that its defects can not be reached except by timely and appropriate special demurrers, that citation of authority is not deemed necessary. But having stated the contents of the petition, it is apparent that there are several grounds upon which the petitioners would be entitled to seek a rescission. And while the plaintiffs can not have complete rescission of the contract, inasmuch as the defendant corporation is a non-resident and service has not been obtained, nevertheless, under the prayer for rescission, under the facts pleaded, petitioners are entitled to have the contract, because of fraud, declared void in so far as the property or funds seized by the court in this State are concerned. If other allegations would not afford ground for rescission and the restoration or return of the payments made by the petitioners, the stipulations in which the company agreed to furnish the conveniences to which we have just referred would suffice to prevent the dismissal of the petition as a whole.

Furthermore, there can be no question that a promise to do a certain thing of value to the promisee, when at the time of making the promise there was no intention to fulfill it, but on the contrary the promise was made with intention not to fulfill it, and as a mere device to defraud, is such a fraud as will avoid any contract induced thereby. This rule in no wise conflicts with what is generally known as the parol-evidence rule, because there is no attempt to vary the terms of a contract. The effect of the allegation and the evidence in support thereof is to show that the effort to contract died aborning and never really existed, because the instrument, regardless of what it may contain, was obtained by the fraud of him who proposed and accepted the contract. In the recent case of Palmetto Bank & Trust Co. v. Grimsley, 134 S. C. 493 (133 S. E. 437, 51 A. L. R. 42), the court held that "Inducing a contract by a promise which there is no ·intention at the time of performing is a fraud for which the contract may be rescinded." The case was one in which the defendant had given a note to the plaintiff bank, secured by a mortgage. The mortgage covered eight separate pieces of real estate, including as tract number one the residence lot of the mortgagor. The answer set up the defense

that the defendant was induced to execute the mortgage by promises of the bank which at the time of making them it never intended to perform. The promises alleged by the defendant as the inducement of the contract evidenced by the note and mortgage were: (1) That the note would be carried by the bank as renewed paper as long as the defendant desired it to be carried, upon payment of the interest. (2) That the bank would finance certain building and improvement plans of the defendant, by which portions of the mortgaged property would be placed on the market and the proceeds of sale be applied to the mortgage, so as to enable the defendant gradually to liquidate the debt. (3) That in the event of the death of the defendant before the mortgage had been satisfied by payment, the bank would relieve from the lien of the above-mentioned mortgage the residence lot above mentioned. A motion was made to strike the answer as sham and irrelevant, and for judgment upon the ground that it was frivolous and not responsive to the pleadings. The lower court granted the plaintiff's motion to strike, and exception was taken to this judgment. In delivering the opinion of the court Cothran, J., said:

"The appeal is not to be determined by the application of either the 'parol-evidence rule,' nor by the rule that details of a charge of fraud must be specifically stated, but by the principle above stated that the making of a promise (which has induced the execution of a contract), by one who had no intention at the time of performing it, constitutes a fraud, on account of which the contract may be rescinded; and by the further principle that, if a valid defense is imperfectly stated, the remedy of the plaintiff is a demurrer and not a motion to strike out the answer. The situations of the respective parties lend color to the contention of the defendant in reference to the alleged promises, the truth of which is not now before us in issue, nor the truth of the further essential element that the bank made them with the intention at the time of refusing to carry them out. The defendant, who appears from the mortgage to have been the owner of considerable property, embarked in the automobile business, managed by others, he being the responsible member of the organization. . . The business had been wrecked by the dishonest conduct of the manager (as alleged), with a large debit to the bank. The bank naturally was anxious for the debt to appear in better shape. The

defendant appreciated his obligation, but in the deflation period was unable at the time to respond. Time, the hope of the financially distressed, was what he desired, and what he alleges the bank promised. The note was made payable in 12 months. The defendant (as he alleges) knew that he could not meet the note at maturity, and it is fair to assume that the bank also knew this fact. In addition to this, the defendant hoped and expected to subdivide his property, build houses, sell the lots, and apply the proceeds to the note. The execution of a mortgage to the bank would completely exhaust his resources for raising the necessary funds for this purpose, and it was on this account that he alleges that the bank promised to finance that project which was to their mutual advantage. Such contemporaneous agreements may have been obnoxious to 'the parol-evidence rule,' if unaccompanied by any circumstances of deception; but if those promises were made to induce the execution of the mortgage with the concealed purpose to disregard them, the 'parol-evidence rule' cuts no figure. In Coleman v. Stevens, 124 S. C. 8, 117 S. E. 305, the court adopted the statement by his honor, Judge Edward McIver, in his charge to the jury: 'A future promise is not fraudulent, unless such a future promise was part of a general . . scheme to induce the signing of a paper or to make one act, as he otherwise would not have acted, to his injury.' In 12 R. C. L. 257, it is said: ' So, if through inducements held out by one person, even by means of a promise alone, another is influenced to change his position, so that he can not be placed in statu quo, and will be seriously damaged unless the promise is fulfilled, then the refusal to perform is fraud. There is even authority to the effect that false representation as to future events will constitute fraud, where those events depend upon the acts of the party making the representation and form the inducement whereby the other party is led into the transaction.' ' When a promise is made with no intention of performance, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defense.' Goodwin v. Horne, 60 N. H. 485." The court, in continuing the discussion, quoted from Herndon v. Durham &c. R. Co., 161 N. C. 650 (77 S. E. 683) ; Hill v. Gettys, 135 N. C. 376 (47 S. E. 450) ; Braddy v. Elliott, 146 N. C. 578 (16 L. R. A. (N. S.) 1121, 125 Am. St. R. 523, 60 S. E.

507) ; Nelson v. Shelby Mfg. Co., 96 Ala. 515 (38 Am. St. R. 116, 11 So. 695) ; Birmingham Warehouse Co. v. Elyton Land Co., 93 Ala. 549 (9 So. 235) ; 26 C. J. 1092.

In *Printup* v. *Rome Land Co.*, 90 Ga. 180 (15 S. E. 764), a motion was made to strike all of the defendant's pleas except the plea of general issue. The trial court granted this motion, and upon review this court reversed that judgment. Printup's pleas which were stricken alleged in substance that the Rome Land Company had a public sale of certain lots. of land which had been surveyed, laid off, and platted, near the City of Rome. The sale was conducted on the land being sold. The public were invited to the sale, and plaintiff and its auctioneer, agents, and officers represented to the defendant and other persons that a dummy streetcar line would be built and permanently maintained and operated through the land and lots then being offered for sale, and exhibited maps and plats showing the location of said car line. Plaintiff and its agent represented that said dummy line was being built and was to be a permanent line and that the lots then being sold would thereby be of easy access and of great value for residence and other purposes; they further represented that arrangements had been made for the erection of manufacturing plants in the vicinity of the lots being sold. Relying on these representations and promises defendant bought two lots for $690, payable one fourth cash and the balance in one, two, and three years in equal installments. He gave notes for the deferred payments, paid the cash payment, and paid all the deferred payments except the notes now being sued on. Plaintiff gave defendant bond for title to the lots. It was set up in the answer that the representations of the plaintiff at the sale and the exhibition of the maps and plats were all wrongfully and deceitfully made for the purpose of inducing defendant and others to bid at the sale and to make sales of said lots, and the plaintiff and its agents then well knew that said representations and promises were not in fact true and would not be carried out. The dummy line had not been built, to the great injury of defendant, and no factories had been erected. Defendant averred that by reason of the facts aforesaid the consideration of the notes sued on had wholly failed; and that the lots so sold to him were of little or no value, were wholly valueless as town lots, and were not worth exceeding the value of farm lands, to

wit, $100 per acre. He attached a statement showing that he had paid for and on account of the purchase $517.50. He prayed that he recover this sum with interest, or such part thereof as he was justly entitled to under the facts. It was further alleged that at the date of the auction sale the plaintiff represented to the defendant and other purchasers that broad graded avenues and streets had been laid out, and that said property and the lots into which it had been subdivided were connected by means of said streets and a dummy line with the City of Rome and its horse-car lines, depot, stores, schools, etc., giving cheap and quick transportation from all portions of the city, and that said streets, avenues, and car lines would be kept open and maintained, and defendant was induced by these representations to buy the lots; but he alleged that said streets, avenues, and dummy line had never been opened, graded, or maintained, but on the contrary they had been abandoned and neglected, and that the lots bought were wholly unfit for residence lots and did not exceed in value $25.

It will be noted that the facts in the *Printup* case were very similar, though not so strong, as those stated in the case before us. But the court held: "The matter pleaded by the defendant in addition to the general issue was good in substance as a defence to the action, whether good for the affirmative relief prayed or not. 2 Warvelle on Vendors, 929, 930; Donelson v. Weakley, 3 Yerg. 178; Rogers v. Salmon, 8 Paige Ch. 559 [35 Am. D. 725]. The rule excluding parol evidence to add to or vary a written contract does not apply, and want of certainty and definiteness, being a defect of form, would not vitiate the pleas unless pointed out by special demurrer. The court erred in striking the pleas on motion." In *Weems* v. *Railroad Co.,* 84 Ga. 356 (11 S. E. 503), it was held that "If the subscriber to stock of a railway company was induced to give his note therefor by representations of the president and other agents of the company that stock to the amount of only $3000 and bonds to the amount of only $12,000 per mile would be issued, and in fact, at the time these representations were made, stock to the amount of $12,000 and bonds to the amount of $15,000 per mile had been, or agreed to be and afterwards were, issued, his subscription is not binding." Justice Simmons, delivering the opinion of the court, said: "We think the court erred in striking this plea. It charges that at the time the defendant gave his note, he

did so upon the representations of the president of the company, and other agents sent out by it to obtain subscriptions, that the road would only issue stock to the amount of $3000 per mile, and would only bond it to the amount of $12,000 per mile, whereas in truth, at the time these representations were made, stock had already been issued, or agreed to be issued, to the amount of $12,-000 per mile, and bonds had been issued, or agreed to be issued, to the amount of $15,000 per mile; that these representations induced defendant to give his note for the stock of said company; that they were false, and were known to be so at the time they were made by the president and other agents of the company. If the facts set up in this plea are true, we do not think that the plaintiff, the railroad company, would be entitled to recover the amount of this subscription, when obtained by fraudulent representations. If the defendant was induced to give his note by the representations [as set forth above], we do not think that either in law or in morals the defendant is bound by his subscription."

For the reasons stated in ruling upon the motion to dismiss the petition for lack of jurisdiction, the court did not err in overruling the grounds of demurrer asserting that the petition should be dismissed, because: (a) It showed that the defendant was a nonresident corporation, and did not show that the defendant had any officer, office, agent, or place of business, or was conducting business in the State of Georgia. (b) The petition did not show that the defendant had been duly and legally served with a copy of the petition and process. (c) There had been no legal service of any kind of the petition and process or a copy thereof upon the defendant.

There is no cause for reversal in any of the assignments of error predicated upon the court's ruling upon the seventeen grounds of the demurrer to the petition. In what has already been said we have ruled upon the first eight grounds of the demurrer. The ninth ground asserts that the facts alleged in paragraph 3 are not sufficient to justify a rescission of the contract between the plaintiffs and the defendant. In dealing only with the question as to whether the non-fulfillment of a promise which was given when there was no intention whatever of performance was fraud, we have already shown sufficient ground to justify the rescission prayed for. The tenth ground avers that it does not appear from the petition

that the plaintiffs were prevented by any fraud from examining and inspecting the land plaintiffs contracted to purchase, or that the plaintiffs did not inspect and examine the land. As to the merit of this demurrer, it suffices to say that conceding that the plaintiffs saw the land, and even if they saw it in its present absolutely worthless condition, they were nevertheless prevented by the fraud, as alleged, from exercising their own judgment as to its real value, and it therefore became utterly immaterial that they examined it; and even though they did examine it, they would not be estopped to assert that they were defrauded. It is asserted in the eleventh ground of the demurrer that the petition shows that the plaintiffs are in quiet and undisturbed possession of the land they contracted to purchase, and therefore all allegations as to alleged encumbrances upon the land should be stricken. We think the trial judge properly overruled this demurrer, because the allegations as to the encumbrances upon the land and proof to support them are material and admissible to make a full showing of the extent of the fraud which was alleged to have been practiced upon the petitioners.

The twelfth ground of the demurrer complains that paragraph 3 does not set forth the names of the duly constituted officers and agents of the defendant, referred to in said paragraph. We deem the designation of "one Bush" as the representative of the Coral Gables Corporation in assisting in promoting the sale, taken in connection with the allegations in other portions of the petition that statements were made in the written contract of the same nature as set out, to sufficiently authorize the inference that the representations made in the petition were authorized by the corporation, if not explicitly, at least constructively and impliedly. Taking into consideration the alleged representations made in the contract itself, and the extensive circulation of literature, maps, and plats etc., of the Biscayne Bay section, part one, of Coral Gables, there is certainly very reasonable ground for a jury to infer that the corporation knew of what was being done and permitted it. If agents other than Bush are shown to have made the representations, or if it appears that Bush was not authorized to make the representations alleged, the defendant will be fully protected upon a trial. But even construing the petition most strongly against the petitioners, the court would not have been authorized to

hold that Bush was not authorized to make the representations attributed to him and which are alleged to have been false and fraudulent, and therefore the court would not have been authorized to strike the paragraph to which this ground of demurrer was directed. The thirteenth ground of demurrer is that paragraph 3 does not allege when and where the officers and agents of the defendant made the representations. We are of the opinion that this demurrer is without merit, as it is entirely immaterial when and where the representations were made if they were in fact made by Bush as alleged and were made prior to the contract for deed entered into by the parties, which fully appears from other allegations in the petition.

The fourteenth ground of demurrer complains that it is not alleged that the agreement referred to in paragraph 19 was contained in the written contract entered into between the plaintiffs and the defendant. As we have already held, what is ordinarily known as the parol-evidence rule is not applicable when it is plain that, instead of there being an effort to alter or vary the terms of the contract, the evidence is introduced for the purpose of showing fraud in the procurement of the contract. In such an instance the party attacking the written instrument does not dispute the contents of the paper as written, or attempt to vary them so as to avail himself of another and different contract. He seeks to show that on account of fraud no contract was ever really made or ever existed, because the writing was so inoculated with the poison of fraud that it never could be vitalized or born as a fully developed contract. The court did not err in overruling this demurrer.

Ground 16 of the demurrer complains that the petition does not show when the plaintiff learned of the alleged falsity of the representations set out in paragraph 3 of the petition. The allegation in another portion of the petition, that the plaintiffs found out in the month of November, 1926, upon their return to the situs of their purchase, that none of the promises or representations of the defendant or its agents had been performed, and the averment that until then the plaintiffs did not know that they had not been performed, to our minds very plainly fixes the time when the plaintiffs learned of the alleged falsity of the representations.

As appears from the record itself, there is no merit in the seventeenth ground of demurrer, which states that a copy of the alleged

agreement between the defendant and the plaintiffs is not attached to the petition or set out therein. In the record which appears before us, the verity of which is certified in the usual manner, there is what purports to be a copy of the alleged contract for deed, and there is no suggestion of a diminution of the record. As far as this court can judge from the record, the copy of the contract was attached at the time the petition was filed; and this doubtless was the reason why the trial court overruled this ground of the demurrer.

In the cross-bill of exceptions error is assigned upon the ruling of the trial court in sustaining the defendant's demurrer based upon the ground that a personal judgment could not be recovered by the plaintiffs in their action. We are of the opinion that the court correctly ruled. There being no service of the petition in the attachment proceeding and the defendant not having submitted itself to the jurisdiction of the court without reservation in which he protested the jurisdiction of the court, the court had no jurisdiction other than in rem.

*Judgment affirmed on each bill of exceptions. All the Justices concur, except Atkinson, J., dissenting.*

HINES, J. concurs in the result.