432

33356.  MEALOR *v.* McNABB.

Decided March 2, 1951.

*J. Ralph McClelland Jr.*, for plaintiff in error.
*J. Kurt Holland, Stephens Mitchell,* contra.

Sutton, C. J.  Gordon J. McNabb, a real-estate broker doing business as McNabb Realty Company, sued W. T. Mealor for $420, as the balance due on commissions under a contract to sell real property.  The petition as amended alleged in substance the following:  C. L. Williams employed McNabb to sell his property, which was described in a contract attached to the petition.  McNabb obtained an offer from Mealor to buy the property, and Williams accepted the offer on May 23, 1949.  Although Williams offered to perform the contract by conveying to the defendant a good and marketable title to the property, Mealor notified McNabb on June 16, 1949, that he had elected to rescind and cancel the contract.  Mealor repudiated the contract without consent of either McNabb or Williams, the seller, and has defaulted in the performance thereof by refusing to purchase the property.  The plaintiff has not released the defendant from his obligation to pay the commission upon his

default, as provided by the contract. The contract entitles McNabb to a commission of $920, to be paid by Mealor because of his default; and against this amount the plaintiff, McNabb, has applied under the provisions of the contract $500, one-half of the earnest money deposited with him by the defendant, leaving a balance due to the plaintiff from the defendant of $420, which the defendant refuses to pay.

The contract was embodied in a printed form, containing in part the following provisions: "Atlanta, Ga., May 23, 1949. The undersigned Buyer agrees to buy, and the undersigned Seller agrees to sell, through McNabb Realty Company, Agent, for Owner all that tract of land in [here followed a description of the tract] including all lighting fixtures attached thereto, and all heating, water heating, and plumbing equipment therein. The purchase price of said property shall be . . $24,000 . . to be paid as follows: Cash. Buyer has paid to the undersigned McNabb Realty Company, Agent, receipt whereof is acknowledged by Agent, $1000.00 as earnest money, to be applied as part payment of the purchase price of said property at the consummation of this sale; and if sale, due to Buyer's default, is not consummated, then one-half of said earnest money shall be applied toward commissions owing Agent hereunder, and Agents shall pay the balance to Seller to be applied toward Seller's damages caused by Buyer's default. In the event the sale is not consummated for reasons other than the default of Buyer, said earnest money is to be refunded to Buyer. Seller agrees to furnish good and marketable title to said property and Buyer shall have a reasonable time to examine the same. In negotiating this contract Agent has rendered a valuable service and Seller agrees to pay Agent commission in accordance with the schedule printed on the reverse side hereof. [The commission of $920 as alleged was in accordance with the minimum provisions of the schedule referred to.] If sale is not consummated due to default of Buyer, Seller shall not be obligated to pay commissions but Buyer shall pay said commissions. . . Agent may enforce this contract to the extent of his commissions due hereunder against any party liable therefor under the terms hereof. This contract constitutes the sole and entire agreement between parties and no modification hereof shall be binding

unless attached hereto and signed by each; and no representations, promises, or inducements shall be binding upon either party or Agent except as herein stated. The following special stipulation shall, if conflicting with the printed matter, control: . . Tax to be prorated. Possession to be given immediately upon closing. This instrument shall be regarded as an offer by the Buyer or Seller who first signs to the other . .

/s/ W. T. Mealor (Buyer).

"The above proposition is hereby accepted, this 23 day of May, 1949.

/s/ C. L. Williams (Seller).

"McNabb Realty Company by /s/ Gordon J. McNabb (Agent)."

The defendant filed a general demurrer to the petition, which was overruled, and the defendant excepted pendente lite to this ruling.

In his answer, the defendant denied the material allegations of the petition, and brought a cross-action for the return of the $1000 earnest money held by the plaintiff. The defendant alleged, substantially: that the contract was void because it was procured by the plaintiff's fraudulent misrepresentations of the condition of the premises, of what would be done in the way of improvement of the property if the defendant signed the contract to purchase it, that the premises were available for immediate occupation, that immediate possession by the defendant was available upon execution of the contract, and that C. L. Williams was then the owner of the property. The plaintiff made these representations knowing they were false, and such representations were made to induce the defendant to execute the contract. The defendant relied upon the representations by signing the contract. Upon discovering the representations, the defendant notified the plaintiff of his election to cancel and rescind the alleged contract and demanded a refund of the $1000 earnest money. On May 22, 1949, when the premises were being exhibited to the defendant and his signature to the alleged contract was procured, the plaintiff represented that the property was being offered for sale and was being sold in its condition as observed by the parties at that time. The following conditions were then observed by the defendant: an

exhaust fan was installed and permanently fixed to the realty in the kitchen; carpeting was nailed and stripped down on the stairway between the first and second floors of the house; valance boards were permanently installed over the windows in the living room; and the walls of the living and dining rooms were freshly painted, clean and unblemished. The defendant was not again able to inspect the premises until June 8, 1949, when he discovered that the appearance and condition of the house had been altered. The exhaust fan had been removed from the kitchen, leaving an opening where it had been installed, with scars, marks, nail and screw holes in the window sills, casings and walls; the permanent carpeting which had previously been on the stairway had been ripped out and removed, leaving nail holes, scars, and discoloration on the risers and steps; valance boards over the windows in the living room had been removed, leaving marks, holes, and chips in the plaster of the walls; and the walls of the living and dining rooms were dirty, cracked, chipped, defaced, and full of holes and blemishes. The plaintiff never offered to deliver to the defendant the property in the condition which it was in on May 22, 1949.

The defendant further alleged that the contract had been canceled and rescinded by the mutual consent of all parties, in that, upon receipt of the defendant's notice of his election to cancel and rescind the contract, the plaintiff, as agent for C. L. Williams, immediately relisted the property for sale and procured a purchaser therefor, and the owner has entered into a subsequent agreement for the sale thereof.

The contract was alleged to be void for the further reason that, upon the date of execution of the contract, C. L. Williams, who signed the contract as the seller, was not in fact the owner of the property and had no right to convey or sell the same.

On the trial of the case, the jury returned a verdict for the plaintiff in the sum of $420. The defendant moved for a new trial, and excepted to the overruling of this motion. The defendant also assigned error on his exception pendente lite to the overruling of his demurrer to the petition.

■ The petition stated a cause of action. It is contended by the defendant that the petition shows that, by applying half the earnest money on his commissions, the plaintiff in treating

the contract as rescinded, and therefore is not entitled to recover anything on the contract. Is the application of the earnest money in this manner an election by the plaintiff to treat the contract as rescinded? This question is answered by the terms of the contract itself: "If sale, due to Buyer's default, is not consummated, then one-half of said earnest money shall be applied toward commissions owing Agent hereunder, and Agent shall pay the balance to Seller to be applied toward Seller's damages caused by Buyer's default. . . If sale is not consummated due to default of Buyer, Seller shall not be obligated to pay commissions but Buyer shall pay said commissions."

That the buyer gave notice of his election to rescind and cancel the contract, together with the allegation that the owner offered to perform the contract and to convey a good and marketable title to the defendant, is sufficient to show that the defendant was in default under the contract. *Booth* v. *Saffold,* 46 *Ga.* 278.

The reply to the contention that the agent's cause of action is against the seller, his principal, on whatever contract he had with him, is also contained in the provision of the contract that "Agent may enforce this contract to the extent of his commissions due hereunder against any party liable therefor under the terms hereof." In *Brittain* v. *Russell,* 78 *Ga. App.* 719 (52 S. E. 2d, 38), which involved a contract with similar provisions for the payment of the agent's commissions by the purchaser in default, this court held that the agent had a cause of action on the contract against such a purchaser. The trial judge did not err in overruling the demurrer to the petition.

■ The defendant in the fourth special ground assigns error on the charge of the court directing the jury to disregard the defense of fraud and misrepresentations. The trial judge in his charge stated that there was no evidence which would have authorized a verdict for the defendant on this issue.

The defendant testified: "I am not making any complaint that they didn't let me in there absolutely free without paying the purchase-price: I am complaining that the premises were not what they purported to be when I signed the contract." From this we gather that the defendant understood the words,

"immediate possession," as used in the plaintiff's advertisements of the premises, to be equivalent to the words of the contract: "Possession to be given immediately upon closing." There was no evidence that the defendant attempted to close the transaction.

The plaintiff denied making any statements as to the condition of the house, while the defendant testified that the plaintiff said, "Here's the house; look at it." James Suggs, who accompanied the plaintiff when the house was shown to the defendant on May 22, 1949, testified that the plaintiff told the defendant that the house was being offered for sale "as is." The defendant's wife testified, "Mr. McNabb said we were buying the house as it was without the furniture."

Supposing that the statement that the house was being sold "as is" might be a promise that the house would be in the same condition after the occupants moved out as it was when the defendant viewed the property on May 22, 1949, there was no evidence that the plaintiff knew that his promise, if it was a promise, was false and would not be fulfilled, so as to bring the case within the rule laid down in the cases of *Coral Gables Corp.* v. *Hamilton,* 168 *Ga.* 182 (147 S. E. 494), and *Floyd* v. *Morgan,* 62 *Ga. App.* 711 (9 S. E. 2d, 717), that a promise given without intent to perform is such a fraud as will entitle the party defrauded to rescind the contract induced by such fraud. As there was no evidence of fraud or misrepresentation affording the defendant a ground for rescission of the contract, the trial judge did not err in removing this issue from the jury's consideration.

■ Special ground five complains of the following charge: "Now, there is some question as to the removal of certain fixtures from the property out there. Ordinarily, personal property may be removed by a tenant and I charge you that, in this instance, from May 22, the time that Mr. Mealor first saw this property, until such time as he moved out, Mr. Daniel, who was occupying that property, was a tenant, or would be considered to be a tenant, of Mr. Williams, the owner of the property, and when I refer to a tenant, I am referring in this case to the Daniels. There is some evidence here that you gentlemen will remember as to the removal of certain property which it is alleged in the defendant's cross-bill were parts of the realty. Now the test

as to whether a chattel—and a chattel is personal property— attached to realty may or may not be removed by a tenant is whether the chattel is annexed to the structure with a view of becoming permanently attached thereto as a part of the realty. The general rule is a tenant is allowed to remove such ornamental and domestic fixtures as may be annexed to the premises by the tenant for more advantageous use thereof provided no material injury results .to the realty by removing the same. Domestic fixtures have been held to include ranges, stoves, fixed-in brick-work, furnaces, gas fixtures, pumps, clocks, window blinds, bath tubs and other features of convenience; and the following articles have been considered ornamental fixtures: hangings, draperies, pier glass nailed to the walls of the house, marble chimney pieces, cornices, etc."

This charge was assigned as error on the grounds: (a) that C. L. Williams did not acquire title to the premises in dispute until May 26, 1949, and no relationship, which would have any bearing upon the defendant's rights, could have existed between Daniel and Williams prior to that date; (b) that Daniel, the occupant of the premises at the time Williams acquired title thereto, was the agent of Williams to hold possession of the premises, and the relationship of landlord and tenant did not exist between Williams and Daniel, so as to make the principles of law given in the charge applicable; and (c) that the rights of the parties should not have been determined on the basis of general rules bearing on the relationship of landlord and tenant, but on the basis of the contract between the parties.

It appears that Williams had a contract to buy the premises in question from one Daniel before accepting Mealor's offer on May 23, 1949, and that Williams received a deed to the property from Daniel on May 26, 1949. Daniel, who sold to Williams, was in possession of the premises on May 22, 1949, when Mealor made his offer to buy, and had moved out about two weeks later.

As Daniel was living in the house and in possession of the property at the time the defendant Mealor first saw it, on May 22, 1949, Mealor was charged with notice of whatever right or interest Daniel had in or to the property. It does not appear from the evidence that Daniel did not have the right to remove the articles in question, the cornice boards, the kitchen exhaust

fan, and the carpet on the stairs, before he conveyed the property to Williams on May 26, 1949. The evidence does not show whether the articles in question were removed by Daniel before or after the property was conveyed by him to Williams, and, in the absence of a showing to the contrary, it will be presumed that they were removed before he conveyed the property to Williams. In these circumstances, no error is shown by this ground of the motion for any of the reasons assigned.

■ The trial judge charged the jury that the defendant contended in his pleadings that the contract had been rescinded by mutual consent of the parties, in that the plaintiff, as agent for Williams, procured another purchaser for the property upon receipt of the defendant's notice of his election to rescind. Elsewhere, the trial judge charged that, if the jury should find from the evidence that there was a mutual agreement between the plaintiff and the defendant or between the plaintiff's principal, Williams, and the defendant for a rescission of the contract, then the defendant would be entitled to recover his earnest money. At the suggestion of defendant's counsel, the trial judge also charged that the parties might abandon a contract by mutual consent so as to make it not thereafter binding, and that a contract may be rescinded by agreement although the evidence thereof may be by conduct and not by words.

The defendant contends, in the sixth special ground, that the court failed to charge specifically that the conduct of the plaintiff in reselling the property was evidence of mutual rescission. The defendant concedes in his motion that the court gave in charge the general principles of law relating to rescission by mutual agreement, and no written request to give a more specific charge was made. This ground of the motion for a new trial is without merit.

■ The evidence authorized the finding of the jury under the charge of the court that the injury to the premises, subsequent to the formation of the contract between Williams and the defendant was slight rather than substantial, so as not to afford the defendant a ground for rescission of the contract. There was no evidence that the seller had ever consented to the defendant's offer to rescind the contract, other than by his selling the property to another person, and this conduct was consistent

with the seller's election to treat the contract as breached rather than as rescinded. In the cases of *Haygood* v. *Kennedy,* 27 *Ga. App.* 689 (109 S. E. 522), and *Greer* v. *Morris,* 34 *Ga. App.* 75 (128 S. E. 204), there was evidence of express consent to the rescission, in addition to the seller's retaking or reselling of the property.

The verdict for the plaintiff was supported by the evidence, and the trial judge did not err in overruling the motion for a new trial on the general grounds.

*Judgment affirmed on the main bill; cross-bill dismissed for want of prosecution on January 2, 1951. Felton and Worrill, JJ., concur.*