CHAPMAN & SON *v.* THE ATLANTA GUANO COMPANY.

On the trial of an action upon a promissory note for $90.20, it was error to strike pleas alleging, that the real consideration of the note was the price of certain guano sold to defendant for $53.10; that the signing of the note was induced by fraud on the part of plaintiff's agent, and done through mistake on the part of defendant; that the note was signed at night when defendant could not well see, and he was informed by plaintiff's agent that it represented only the indebtedness above set forth, and upon that representation defendant signed it; and further, that the note was made at night, when defendant signing it could not see the amount, but relying on and having confidence in the plaintiff, defendant signed the same upon the representation that the note

was for the account, at the price stated in the plea; that the note was procured by fraud or mistake, and is in excess of the amount due $37.10, and defendant did not know said excess was in the note when signing.

July 26, 1893.

Before Judge Marshall J. Clarke. Fulton superior court. September term, 1892.

Hutcheson & Key, for plaintiff in error.

George S. Thomas, *contra.*

Lumpkin, Justice.

The question made in this case is a close one, concerning which we have been unable to reach a perfectly satisfactory conclusion. We have endeavored, however, to follow what seems to be the true spirit of previous adjudications by this court, and in so doing have decided that the merits of the defendant's pleas, the substance of which is set forth in the head-note, should have been submitted to the jury.

The two cases most like the case at bar are those of *Bostwick* v. *Duncan, Johnston & Co.,* 60 *Ga.* 383, and *Angier et al.* v. *Brewster,* 69 *Ga.* 362. Both came from Spalding county, and in each the action was brought upon a promissory note given for the purchase of guano. At first glance, the two cases cited do not seem to be in harmony. We think, however, having reference to the particular facts upon which the decision in each of them was based, they may be reconciled, and that our ruling in the case now before us can be upheld consistently with both. In the *Bostwick* case, the pleas of the defendant alleged, that the plaintiffs, by one W. T. Cole, "obtained said note by fraudulent representations, saying the same was an ordinary guano note; that relying upon said agent, he [defendant] did not read the same, or have the same read, said agent saying 'sign note— that is all right,' and defendant signed the same, not knowing that plaintiff did not . . . the same, and,

shortly before signing, said agent saying if the guano was not good, not to pay for the same"; that, "at the date of said note, said agent sent to defendant the note sued on and represented that he desired to close up the contract as to the purchase of said guano, as made with said defendant, relying upon the contract made at the time of said purchase, with said agent, and believing that the said guano note, so presented to be signed, contained only the terms of ordinary guano notes, and in which ordinary notes only the cotton option delivery and the waiver of homestead were contained, said defendant, without reading said note sued on, but relying on the contract and agreement in said note contained as being the same existing in parol, made and signed said note." The plea still further alleged that, by the fraudulent conduct and representation of plaintiff's agent, as before alleged, the conditions and terms of the note were falsely and fraudulently imposed on defendant as to the clause "without warranty of vendor, and with all faults, and at purchaser's risk," to which he never really assented. A close inspection of these pleas will show that the defendant does not assert that the plaintiff's agent represented to him that the note in question did or did not contain any particular statement or stipulation. According to these pleas, the plaintiff's agent merely characterized the note as "an ordinary guano note," and he might have been perfectly honest in entertaining this opinion of the note as it stood. The defendant did not take the trouble to inquire of the agent what he meant by the expression "an ordinary guano note," nor did he inform the agent what his (defendant's) idea of such a note was. The defendant, with equal good faith, might have had an entirely different conception from that entertained by the plaintiff's agent of what constituted "an ordinary guano note." Indeed, the expression is certainly ambiguous, and does not

convey any very clear idea of the kind of note sought to be described. The writer would find it a very difficult, if not impossible, task to accurately define what is " an ordinary guano note." It therefore does not appear by these pleas that the plaintiff's agent made the defendant any clear and definite statement as to the contents of the note in question, or that the statements he did actually make could, with any fairness, be said to have been made with intent to defraud. Again, it would seem that the plaintiff's agent was not present when the note was actually executed. The plea says the agent *sent* the note to defendant some time after the guano was purchased, and that defendant, without reading it, signed it upon the faith of the representations made by the agent at the time of the purchase, as to the character of the note he would take. Certainly, under all these circumstances, there was no excuse whatever for not reading the note before signing the same, and accordingly, this court declared, through Chief Justice WARNER, that the pleas were bad, and that it was not the duty of courts to relieve parties from the results of their own gross negligence.

In the *Angier* case, the purchaser of the guano read the note, and objected to signing it so long as certain stipulations remained in it. The plaintiff's agent then agreed to strike the same out, and with a pen pretended to do so, but in fact, struck out some other portion of the note. The defendant, relying upon the honesty of the agent, and seeing him apparently make the correction desired, signed the note without taking the pains to see if the proper erasure had been made. Here there was an actual, positive and inexcusable fraud perpetrated upon the defendant by the plaintiff's agent. Accordingly, this court held that the plea was not demurrable, and could be sustained by parol evidence, SPEER, Justice, stating the rule to be, that " parol evi--

dence would be admissible under a plea alleging fraud,. where the fraud charged is some device or trick by which either stipulations were fraudulently left in a. paper which it was expressly agreed should be left out,. or where it was agreed the stipulations should be inserted, and they were fraudulently left out." This rule seems to be founded upon the idea that one is not bound to exercise, as against actual, deliberate and palpable· fraud, that degree of diligence which could reasonably be expected and required when persons are dealing with each other at arms' length, and when each is expressing· to the other his mere opinions with regard to the transaction in which they are mutually engaged.

The distinction, therefore, between the two cases may be said to be, that in one the defendant acted with the grossest kind of negligence, without attempting to inform himself what the plaintiff's agent really meant by using certain words of description, and, very probably,. without himself having any clear or definite conception of what those words meant; while in the other, the· plaintiff's agent practiced upon the defendant a fraudulent trick, and the latter was deceived and injured by relying upon the good faith and honesty of the agent,. who, well knowing of the confidence reposed in him, deliberately and wilfully took undue advantage of the same. The present case more closely resembles the latter of these two cases. The pleas, in effect, state that the· plaintiff's agent represented the note to be for $53.10,. while in point of fact it turned out to be a note for $90.20. This was not a matter for a mere difference of' opinion. If the pleas speak the truth, the plaintiff's agent perpetrated a palpable fraud upon the defendants, involving nothing short of actual dishonesty. It is true· that in the last plea the defendants aver that the note· was signed upon the representation that it was for the account at the price stated in the plea, to wit $53.10,.

without alleging by whom this representation was made; but construing all the pleas together, we think it was sufficiently alleged that the representation in question was made by the plaintiff's agent, and that the note was signed upon the faith of this representation. In our opinion, therefore, this case is clearly distinguishable from that of *Bostwick, supra,* as to the character of the representations made by the plaintiff's agent, and the tendency of these representations to mislead and deceive the defendants. We also think it is distinguishable from the case last mentioned, upon the question of diligence. In the former case, no reason whatever was given for failing to read the note, except that the defendant chose to rely upon the agent's statement as to what kind of a note it was. In the case at bar, one of the pleas alleges that the note was signed at night, when defendant signing the same could not well see; and another avers that the note was made at night, when defendant could not see the amount. These allegations, it is true, are not strong. They do not show that a light might not easily have been obtained if the defendant had desired it; or that there was any haste about the transaction; or that the plaintiff's agent urged or requested an immediate execution of the note, or did anything, except the making of the representations complained of, to prevent the defendant from fully informing himself of the amount set forth in the note. Still, we think the pleas contain enough to authorize the case to be submitted to a jury, and allow them to determine whether or not a fraud was actually practiced upon the defendant.

We are fully aware of the great importance of the rule that persons who are diligent in having their contracts reduced to writing ought to be amply protected, and that generally, neither by plea nor by the introduction of parol evidence, should a party be permitted to

contradict or vary the terms of a valid written instrument. But we do not understand the law to cut off defendants from pleading and proving actual frauds upon them by the insertion in written contracts of something which one of the parties well knew could not be honestly incorporated in it, and which the other party never intended should be embraced within its terms. If, in the present case, the defendants did not actually owe the plaintiff more than $53.10, and if the amount of $90.20 was dishonestly inserted in the note, and the defendants signed the note under the circumstances set forth, in ignorance of this fact, they ought not to be compelled to pay the larger amount. As already stated, the question with which we have here attempted to deal is not free from doubt or difficulty, but we have endeavored to follow what we regard as the safer and better course. It will be observed that even under the law as we have ruled it, the plaintiff will still have the advantage of making out a *prima facie* case by the introduction of its written contract, and the burden will rest upon the defendants to establish, by a preponderance of the testimony, the fraud complained of, if it in fact exists. We express no opinion as to the merits of this particular case, but leave the same to be determined by the jury at the next trial, in view of the evidence which may be offered in support of the pleas, and of the evidence with which the same may be met by the plaintiff.

*Judgment reversed.*