HANCOCK *v.* GUNTER.

No. 14455.   March 11, 1943.   Rehearing denied March 24, 1943.

649

*J. H. Tipton* and *R. D. Smith,* for plaintiff in error.

*Robert B. Williamson* and *Robert R. Forrester,* contra.

DUCKWORTH, Justice. ■ The defendant in error has suggested in writing a diminution of the record, as provided in the Code, § 6-812. It is stated that the motion for a new trial was overruled and denied by an order dated November 14, 1942; that on November 16, 1942, at the request of movant, the court ordered further argument on the motion, and on November 23, 1942, the court refused to set aside the judgment denying the motion, but ordered that the judgment originally dated November 14 be changed in date to November 23, in order to give ample time to except. The suggestion recites that the original order dated November 14 appears on the minutes of the court and the date is written with a typewriter, and that the date has been changed with a pen by writing thereon the date "23rd." The bill of exceptions assigns error on a judgment dated November 23, 1942, overruling

the motion for a new trial. The judgment appearing at page 183 of this record, dated November 23, 1942, and signed by the trial judge, recites that "after duly considering the above motion for a new trial, and after a hearing had thereon, it is ordered by the court that the motion for a new trial heretofore filed by L. E. Hancock in the above matter be denied, and a new trial is hereby refused." If the suggestion of the diminution of the record is made for the purpose of correcting what is thought to be error in the record of the trial court, then it should be obvious that the trial court, and not the Supreme Court, is the proper one in which to seek a correction of such errors. *Beecher* v. *Carter,* 189 *Ga.* 234 (5 S. E. 2d, 648). The suggested record would in no wise aid this court in ruling upon the exceptions contained in the bill of exceptions. The judgments there complained of are in the record in this court. We will not request the additional record.

■ ■ These headnotes do not require further elaboration.

■ The grounds of special demurrer assailing those portions of the amended petition which seek to avoid the security deed and the four notes thereby secured, dated March 10, 1937, on grounds of alleged fraud, are meritorious. Both the allegations of the petition and the brief of counsel in support thereof seek to sustain petitioner on this point upon the basis that a confidential relationship existed by virtue of a partnership. The provisions of the Code, §§ 37-707 and 75-201, together with *Wimberly* v. *Ross,* 152 *Ga.* 258 (109 S. E. 500), are cited and relied upon. The fatal weakness of this argument is found in the fact that on the day the deed and notes were signed, and when it is alleged that the confidence was reposed, the relationship of partners did not exist. The petition clearly states that the basic foundation of the partnership was to be the purchase by petitioner of an undivided interest in the described tract of land, and the petition alleges that the conversations and negotiations leading to the partnership and the purchase of this land were finally consummated on March 10, 1937. Thus it is plain that the language of the petition itself takes the question of a partnership out of any consideration at the time the instruments were executed and when it is claimed that a fraud was practiced by the defendant upon petitioner. Under these circumstances, whether or not the relationship of partners creates a confidential relation that may be relied upon in matters and transac-

tions outside the scope of the partnership, it could not be relied upon here, because of the non-existence of the partnership at the time.

But it is further argued, that, independently of a confidential relationship, the petitioner was authorized to rely upon the defendant, and that the defendant perpetrated a fraud upon him, relievable in equity. He cites *Chapman* v. *Atlanta Guano Co.*, 91 *Ga.* 821 (18 S. E. 41), where this court held that the defendant was entitled to protection against a fraud practiced by the plaintiff's agent, who represented to the defendant that the note in question was for the sum of $53.10 when in fact it was for $90.20. The note was signed at night. As stated by this court in *Lewis* v. *Foy*, 189 *Ga.* 596, 598 (6 S. E. 2d, 788) : "While there may be serious doubt and uncertainty as to what particular facts will constitute fraud authorizing rescission of a written contract, yet there can be no doubt as to the rule of law by which such facts must be measured in determining whether or not a written contract may be rescinded." It was there held that a party who can read must read, or show a legal excuse for not doing so, and that fraud which will relieve a party from reading must be such as prevents him from reading.

In *Dortic* v. *Dugas*, 55 *Ga.* 484 (6), it was said : "With equal opportunities for knowing the truth, a party grossly failing to inform himself must take the consequence of his neglect." This means that in order to be heard in equity one must show that he made reasonable use of the means available to him to ascertain the truth. It means also that one may not voluntarily accept the statements and representations of another and act thereon, instead of looking for himself, and then obtain relief in equity from the obligation which he assumes. This principle or idea was clearly discussed by Chief Justice Bleckley in *Dyar* v. *Walton*, 79 *Ga.* 466 (7 S. E. 220). There the defendant had concluded a settlement of his fertilizer account by executing four notes secured by a mortgage on land. In resisting a foreclosure of the mortgage, he set forth as his defense, that he was unprepared for the settlement, was absent from home, pressed with other business, and that his books and papers were not at hand; that he was too unwell to examine calculations; that the agent of the other party was urgent and pressing; that he made the settlement, trusting entirely the

calculations of the agent and the agent's promise that if errors were made they would be corrected. It was said: "If he was unprepared, it was reckless disregard of his lack of preparation which brought about the result. He knew then the importance of his books and papers; their importance is not an after-discovered fact. . . . Courts do not attempt to guard men against their own rashness and folly, but will leave them as free agents to protect themselves. A settlement deliberately made, and closed up by solemn writings deliberately executed, is not a thing to be opened as matter of indulgence to gross negligence, though in consequence of such negligence one party obtained an advantage over the other. There was no artifice employed to draw Mr. Dyar into this settlement. And even if he trusted to the agent then representing the adverse party, as to some matters of law involved, he had no right to take his law from that source unless he was willing to abide by it, but ought to have obtained such advice as he needed, if he did need any, from sources better informed or more friendly to his interest. He can not complain if the courts afford him no better justice than he administered to himself in a settlement voluntarily made. The very object of that settlement, if it had any object, was to fix upon a standard of justice. He gave his consent to that standard. He deliberately measured his liability in dollars and cents to the company he had been representing, and he signed and sealed the evidence which he must have known might be used as a guide to the courts in administering remedies against him to enforce his liability."

In *Lewis* v. *Foy,* supra, it was held that the absence of one's glasses, where there was no emergency requiring immediate action, was not sufficient to justify that one in relying upon the representation of the other party as to the nature and content of the written instrument executed. That decision is authority for a ruling here that the absence of petitioner's glasses did not excuse him for relying upon representations of the defendant as to the nature and content of the papers he signed. There was no trick or artifice upon the part of the defendant which prevented the petitioner from procuring his glasses, if need be, and reading for himself the notes and deed which he signed. And while it is alleged that the defendant said he would read the papers, it is not alleged that he did read them. As stated by Judge Bleckley in

the above quotation, "he deliberately measured his liability in dollars and cents, . . and he signed and sealed the evidence which he must have known might be used as a guide to the courts in administering remedies against him to enforce his liability." The allegations of the petition which seek to avoid the security deed and notes executed on March 10, 1937, are insufficient for that purpose, and should have been stricken on demurrer. The court erred in overruling the special demurrers attacking these portions of the petition. *Judgment reversed. All the Justices concur.*