### 58887. CAWTHON MOTOR COMPANY v. SCHEUFLER.

BIRDSONG, Judge.

Plaintiff below, Scheufler, purchased a used 1974 Fiat station wagon from appellant Cawthon Motor Service Co. in March, 1976. Eight months later, Scheufler filed a claim or statement with the Governor's Office of Consumer Affairs, alleging essentially that Cawthon Motors had deceived him as to the actual mileage on the car. After investigation and unsuccessful efforts by that agency to negotiate a settlement between the parties, Scheufler retained private counsel and sued Cawthon in Fulton County State Court. He alleged, in Count 1 of his complaint as amended, that Cawthon had intentionally violated 15 USC § 1987 (Motor Vehicle Information and Cost Savings Act of 1972, as amended 1976), which requires the posting of a sticker on a vehicle's left front door facing to indicate actual mileage when the odometer has been repaired or replaced and is incapable of

registering the actual mileage. In Count 2, Scheufler alleged a cause of action for fraud and deceit under Georgia law. The jury awarded Scheufler $1,500 damages for Count 1, which included treble damages for violation of 15 USC § 1987 with intent to defraud; $500 actual damages under Count 2, with $2,000 punitive damages. The trial judge subsequently awarded Scheufler $3,500 in attorney fees.

Cawthon appeals, enumerating seven errors below, including the admission of testimony and exhibits concerning the dealings of Scheufler and Cawthon with the Governor's Office of Consumer Affairs (OCA) and the refusal to grant Cawthon's motion for mistrial, motion to strike the evidence, and motion for new trial.

The evidence shows that the car had originally been driven 5,549 miles as a demonstrator until it was sold to a Mr. Curlee. When the mileage had reached 17,160 miles, problems with the speedometer necessitated replacement of the odometer head, because of which the odometer registered zero miles. The car was later traded in with 2,888 miles showing on the odometer. All of the service work had been done at Cawthon Motors and was documented in their service file. In March, 1976, Scheufler purchased the car from Cawthon Motors. Scheufler testified that the salesman, Woodall, told him that Curlee, who was listed as the previous owner on the owner identification card in the warranty book, was a Fiat factory representative. Scheufler also testified that Woodall told him the odometer head had been replaced and that 2,888 miles was not the actual mileage; when Scheufler asked Woodall what was the true mileage, Woodall stated he did not know, and went back to the service department to find out. Scheufler testified that Woodall returned from the service department with no documents in his hands, but told Scheufler the previous mileage had been about 7,000 miles, then went into the president's office and returned with several signed documents, including the owner identification card with the notation stated thereon, "speedometer head change at 6,881 miles, [signed] Jimmy Price, Pres." The salesman, Woodall, denied having told Scheufler the car had belonged to a factory representative, or that the car had

been driven about 7,000 miles before the odometer was changed, but rather said that he did not know what the mileage had been, although he admitted that he perhaps could have looked through the service reports to find out. Woodall testified that he had never seen the notation on the owner card concerning the speedometer head being changed at 6,881 miles, until a copy was shown to him during the investigation done by the OCA. Jimmy Price, president of Cawthon Motors, stated that the notation on the car, and his signature, are a forgery; that he always signs his name "James D. Price, Jr." All other documents bearing his signature, including the bill of sale to Scheufler, bear the signature "James D. Price, Jr." in writing noticeably different than that shown on the owner card. No attempt was made by Scheufler to prove that the notation and signature were not a forgery. Price stated he had sold the car to Curlee and was familiar with the service record, and that he had known the actual mileage had been changed at 17,160 miles. Price never met or talked with Scheufler during Scheufler's purchase of the car. The bill of sale to Scheufler which he signed, indicates that the car was sold to Scheufler as "used" and not "new" (as would be a demonstrator), and prominently displays the following statement: "The seller states that the mileage as recorded on odometer is *2,888* on vehicle described above. We have no knowledge that the odometer reading is different from the number of miles this vehicle has actually traveled. [Signature of Dealer] James D. Price, Jr." The owner identification card shows that Curlee bought the car in June, 1975, nine months prior to Scheufler's purchase, and clearly bears Curlee's full name, his address in Fairburn, Georgia, and his telephone number.

Scheufler never contacted Curlee until after September, 1976. After several service trips to Cawthon, where Scheufler received service which he considered to be unsatisfactory, Scheufler called Curlee to ask why he had sold the car and learned that it had been driven nearly 20,000 miles when Curlee traded it in. Scheufler did not contact Cawthon Motors again but instead, in November, 1976, filed a claim with the OCA, which proceeded to investigate the matter and attempted to

negotiate a settlement. Cawthon has at all times denied any intent to misrepresent the mileage or any intent to defraud. *Held:*

1. Over strenuous objection, the trial court permitted an OCA investigator to testify to his investigatory efforts and procedure, and admitted into evidence the letters written by Scheufler to the OCA to initiate his claim, the written statement of claim made by Scheufler to the investigator, Forbes, in his office, and the formal "notice of contemplated legal action" served by the OCA upon Cawthon, which set forth certain violations alleged against Cawthon. The investigator, Forbes, stated that he finally referred Scheufler to private counsel because the OCA was "unable to negotiate a settlement with Cawthon and Price." It was urged by Scheufler at trial that the exhibits and Forbes' testimony were admissible to establish that Cawthon had known at the time of the sale that its representations to Scheufler were false and had intended then to defraud him, and further, to establish aggravating circumstances and Cawthon's bad faith in dealing with Scheufler both during the transaction itself and during the intervention of the OCA. The testimony and evidence were admitted to show that certain statements were made to the investigator, and not that the statements and findings were true, towards the ultimate purpose of showing why the investigator Forbes proceeded as he did in the case.

At trial, Cawthon objected that the material was irrelevant, hearsay, self-serving, invaded the province of the jury, and was inadmissible as being evidence of compromise. On appeal the argument centers on the inadmissibility of the material under Code § 38-408, dealing with admissions made with a view to compromise. It is undisputed that in its dealings with the OCA, Cawthon made no adverse admissions of any kind and that there was in fact no negotiation, but rather that in all dealings with the OCA, Cawthon merely stated and maintained its position of defense.

We hold it was error to admit the testimony and evidence presented by the investigator of the Office of Consumer Affairs. The material was inadmissible because it sought to show the investigative efforts and

results of the OCA, which were unsuccessful in resolving the dispute. *Central Railroad v. Rogers & Sons,* 66 Ga. 251. The testimony was hearsay because it did not derive its value solely from the credit of the witness himself, but rested mainly on the veracity and competency of other persons to whom the witness had talked (Code § 38-301). The testimony and exhibits presented by Forbes produced no original evidence going to the issues in the case, i.e., fraud and misrepresentation; there were no admissions made to Forbes by Cawthon and all the evidence derives its merit from other sources which either were self-serving, or involved persons who were not present at trial or who testified in their own right. Forbes' testimony and exhibits were the products not of his own first-hand knowledge, but of what had been represented to him. See *Turner v. Hardy,* 198 Ga. 626, 641-642 (32 SE2d 483); *Chandler v. Gately,* 119 Ga. App. 513, 516 (167 SE2d 697); *McDonald v. Redding Lumber Co.,* 43 Ga. App. 656, 657 (5) (159 SE 888). We find no authority which indicates that investigators, as agents of the state or otherwise, may testify to the fruits of their investigations without regard for the hearsay rule; rather such witnesses, even agents of the state, are bound by that rule and must testify from their own first-hand knowledge alone. See, e. g., *Bryant v. State,* 191 Ga. 686, 687 (3) (13 SE2d 820). Appellant claimed and the trial court ruled that the testimony was admissible not to show the truth of the statements but rather to show why the investigator proceeded as he did (see Code § 38-302). However, what the investigator did, and why he did what he did are irrelevant and immaterial to the issues in the case; what he did produced no evidence that was not hearsay or opinion (see Code § 38-1708) and what the OCA did is not an issue in the case. It was otherwise in *Glosson v. State,* 77 Ga. App. 705, 706 (3) (49 SE2d 691), because an issue in that case concerned whether certain action had been taken by the Fulton County Health Department, and therefore the testimony of the health inspector that he took such action because he had received a certain report, was highly relevant. The testimony and exhibits, which included the self-serving letters and claim statement which Scheufler prepared for the OCA, were irrelevant

and therefore were not rendered admissible by any other rule. The "notice of contemplated legal action" served upon Cawthon by the OCA was entirely irrelevant because it alleged violations under the Georgia Fair Business Practices Act, which are not an issue in the case, and furthermore, the document was highly prejudicial to Cawthon.

Appellee Scheufler does not argue on appeal, as he did at trial, that the dealings of the OCA with Cawthon were relevant to show bad faith and aggravating circumstances on the part of Cawthon. Such a position would be untenable, since the claim against Cawthon was disputed (see *Delta Air Lines v. Isaacs,* 141 Ga. App. 209, 211-212 (233 SE2d 212); *Pacific Nat. Fire Ins. Co. v. Beavers,* 87 Ga. App. 294, 296-297 (73 SE2d 765)) and Scheufler concedes that Cawthon made no admissions during its dealings with the OCA but merely "maintained its position." Punitive damages are recoverable for aggravating circumstances in the act giving rise to the cause of action (*Southern Bell Tel. &c. Co. v. C & S Realty Co.,* 141 Ga. App. 216, 219-220 (233 SE2d 9)) and where the claim is disputed, mere refusal to pay is not bad faith (*Lovell v. Frankum,* 145 Ga. 106, 109 (88 SE 569); *Southern Bell,* supra, p. 223; and see *Janney v. Dugger,* 86 Ga. App. 414, 415 (71 SE2d 777)). The statement that the OCA was "unable to negotiate a settlement" with Cawthon was likewise irrelevant, as having no probative value to the issues of the case. Moreover, the statement was inadmissible under Code § 38-408. It is true that no admissions were made by Cawthon in the course of the OCA's intervention (see *Dependable Ins. Co. v. Gibbs,* 218 Ga. 305 (127 SE2d 454)), and there is no evidence of a compromise (see *Benn v. McBride,* 140 Ga. App. 698 (231 SE2d 438)), and the objection is not made by the party who apparently *offered* a compromise (*Benn v. McBride,* supra). However, the implication of the statement in this case could prejudice Cawthon before a jury. The evidence implies that Cawthon refused to cooperate in negotiating a settlement, despite the investigator's findings and despite his best efforts. This implies bad faith, yet is not relevant to determine that issue because mere refusal to pay or settle a disputed claim is not bad faith (*Lovell,*

supra; see also *Newton Bros. v. Shank,* 240 Ga. 471, 472 (241 SE2d 231); and *Pacific Nat. Fire,* supra) or stubborn litigiousness. *Schafer Baking Co. v. Greenberg,* 51 Ga. App. 324, 326 (180 SE 499). To hold otherwise would do injury to the spirit and purpose of Code § 38-408 (see *Benn v. McBride,* supra), since parties would hesitate to enter settlement negotiations on disputed claims if their ultimate failure to settle were admissible in evidence against them. See *Delta Air Lines v. Isaacs,* supra, p. 211. When the jury reaches a verdict settling a bona fide dispute against the party who refused to settle or pay a claim, and vindicating the party who requested the settlement, the temptation would be great to then conclude that the former party was unjustified in disputing the claim, and was acting in bad faith, and to thus award attorney fees on that basis. This is bootstrap logic and is not the law. *Lovell,* supra; and see, e.g., *Liverpool &c. Ins. Co. v. Ellington,* 94 Ga. 785, 791-792 (21 SE 1006), and see *Buffalo Cab Co. v. Williams,* 126 Ga. App. 522, 525 (191 SE2d 317). The testimony was inherently prejudicial (*Newton Bros.,* supra). The sum of the investigator's testimony was likewise prejudicial, because he was permitted to give the results and conclusion of an independent investigation which was based on hearsay and was irrelevant, but which testimony could tend to persuade the jury that it carries the weight of governmental authority and expertise. The entire testimony was illegal evidence, and requires a reversal unless the other evidence demands a verdict. *Thigpen v. Batts,* 199 Ga. 161 (33 SE2d 424).

2. As to Count 1 of plaintiff Scheufler's case (i.e., that Cawthon violated the federal "odometer statute" in failing to place on the car door a sticker indicating actual mileage, and in doing so with intent to defraud), the verdict is not demanded. The evidence is that there was no sticker on the door when Scheufler first looked for it, nine months after he bought the car; that Cawthon Motors usually placed such stickers on cars in the normal course of business; and that such stickers are just like oil change stickers and were easily lost or removed. There is no evidence that Cawthon never placed a mileage sticker on the car Scheufler bought, nor does the fact that a blank

mileage sticker was found in the service file, necessarily indicate that this was the only sticker and that no other was ever placed on the car.

As to Count 2, concerning fraud and misrepresentation, the evidence is very weighty but nevertheless does not *demand* the verdict. It is undisputed that neither Price nor the salesman Woodall, nor any other person at Cawthon Motors, advised the appellee Scheufler that the actual mileage had been 17,160 before the odometer head was changed, and that this fact was known to Price and easily accessible to Woodall. Yet, Scheufler was under an express duty to exercise reasonable diligence and ordinary prudence in ascertaining the truth and to make proper inquiry so as to make his own independent decision, without relying absolutely on persons who owed him no confidentiality. *Brim v. Couch,* 184 Ga. 310 (191 SE 94); *Browning v. Richardson,* 181 Ga. 413 (182 SE 516). Scheufler had been advised that the odometer had been changed and did not register the actual mileage. He states he was told that the true mileage was 9,761 miles, but he was aware that the vehicle was two years old, and that it was a 1974 model but had been in the possession of Curlee (who Scheufler thought was a factory representative) only since June, 1975. This information and Curlee's complete name, address and telephone number were clearly printed on the owner identification card which Scheufler received and examined when he bought the car. He closely examined and signed the bill of sale, upon which the president of the company had certified the mileage on the odometer, 2,888, to be the actual mileage. This representation was plainly at variance with what Scheufler states he had just been told. Despite all those circumstances, Scheufler never contacted the previous owner Curlee to determine for himself the actual mileage. We therefore cannot say that the evidence in this case demands a verdict of fraud and misrepresentation by Cawthon for which Scheufler is entitled to recover. The verdict and judgment are reversed upon the grounds alleged in enumeration of error 1, and the case remanded for new trial; we therefore find it unnecessary to examine the grounds of appeal further.

*Judgment reversed and remanded. Quillian, P. J.,*

*and Smith, J., concur.*

ARGUED NOVEMBER 19, 1979 — DECIDED FEBRUARY 4, 1980.

*Arthur P. Tranakos, Laurin M. McSwain,* for appellant.
*John R. Gaughen, Clayton H. Farnham,* for appellee.