59358. PRICE v. MITCHELL et al.
59359. J. L. TODD AUCTION COMPANY v. MITCHELL et al.

CARLEY, Judge.

Appellant-Price engaged the services of the appellant-Todd Auction Company (Todd) to sell his property. Appellee-Mitchell and her now deceased husband were the high bidders at the auction and signed a contract to close the sale within 30 days. The Mitchells paid a $37,000 deposit to Todd, to be retained by Price as liquidated damages in the event of the Mitchells' breach. The Mitchells accepted possession of the property but, before closing, a dispute arose as to certain representations allegedly made by Price and Todd with reference to the property as inducements for the purchase thereof by the Mitchells. The Mitchells refused to close the deal until their demand that these representations be honored was met. The primary alleged representations relied on by appellee were that a generator for back-up electricity would be reinstalled and that a road to the property would be relocated. Subsequently the Mitchells filed the instant suit against Price and Todd, seeking the return of the $37,000 deposit. The jury returned a verdict for the Mitchells and judgment was entered thereon. Price and Todd appeal.

1. Appellants urge that it was error to deny their respective motions for directed verdict and judgment n.o.v. "'A promise to do a certain thing for the benefit of the promisee, made to induce his entrance into a contract, the promisee earnestly believing that he would receive the benefits consequent upon the fulfillment of the promise, when at the time of making the promise there was no intention on the part of the promisor to fulfill it, but on the contrary the promise was made with intent not to fulfill it and was uttered as

a mere scheme or device to defraud, is such a fraud as will void any contract induced thereby. A promise thus fraudulently made will authorize rescission of a written instrument purporting to be a contract.' [Cits.]

" 'A material representation falsely made by a vendor to a vendee to induce a sale, and made with knowledge of its falsity and acted upon to the vendee's injury, amounts to actual fraud ([cits.]), and will void a contract ([cit.]), and authorize rescission by the vendee if he acts promptly after discovery of the fraud and restores or offers to restore whatever of value he has received by virtue of the contract.' [Cits.]" *King Sales Co., Inc. v. McKey,* 104 Ga. App. 63, 67 (121 SE2d 48) (1961). " 'When a vendee is induced to enter into a contract for the purchase of land by the fraud of the vendor, when the former discovers the fraud he has an election of remedies. One of such remedies is to rescind the contract, and another is to affirm the contract and sue for damages for the fraud. (Cit.) . . .' [Cit.] 'One who has been fraudulently induced to purchase property may, after discovering the fraud, affirm the contract and sue for damage resulting from the fraud, or he may rescind the contract for fraud and, after offering to restore, recover the purchase price paid by him. (Cit.) . . .' " *Corbin v. Lee,* 121 Ga. App. 784, 785 (175 SE2d 102) (1970). In the instant case, the Mitchells obviously have chosen not to affirm the contract since they refused to consummate the transaction. Therefore, the Mitchells sought recovery of the $37,000 deposit paid on the purchase-price and, should the evidence support a finding of fraud in the inducement, a recovery of this amount would be authorized. *Walters v. Hagan,* 53 Ga. App. 547 (186 SE 563) (1936). See also *Eastern Motor Co. v. Lavender,* 69 Ga. App. 48 (24 SE2d 840) (1943). "[U]nder Georgia law, traditionally two actions have been available to a buyer in which to sue a seller for alleged misrepresentation in the sale. The buyer could affirm the contract and sue in contract for breach or he could seek to rescind the contract and sue in tort for alleged fraud and deceit. [Cits.]" *City Dodge v. Gardner,* 232 Ga. 766, 768 (208 SE2d 794) (1974). The evidence is in conflict as to what representations were in fact made to the Mitchells to induce them to enter into the contract to purchase the property. Suffice it to say that there was evidence which would authorize the jury to find that Price and Todd had made representations prior to the execution of the contract that the property would be served by a reinstalled back-up generator and a relocated roadway but that the benefits of such promises were not forthcoming and that the Mitchells refused to close. It was, under this evidence, not error to deny Price's motions. *Printup v. Rome Land Co.,* 90 Ga. 180 (15 SE 764) (1892); *Coral Gables Corp. v.*

*Hamilton,* 168 Ga. 182 (147 SE 494) (1928). Nor was it error to deny the motions of Todd. *Commercial City Bank v. Mitchell,* 25 Ga. App. 837 (105 SE 57) (1920).

2. One count of the Mitchells' amended complaint alleged that the contract had been "intentionally and materially altered" and that for this reason they were entitled to rescind the contract and recover their $37,000 deposit. At trial the seller's copy and the office copy of the contract were introduced into evidence. Those copies have the words "& road rights of way" typed after the printed reservation and exception clause in the form contract that the property was "subject to existing and utility easements," so that those copies read "Reservations and exceptions: [handwritten material] Subject to existing and utility easements *& road right of way.*" (Typewritten material emphasized.) The Mitchells' copy did not contain the typewritten phrase. It was established through testimony that the typewritten phrase had been added to the two copies of the contract by a secretary of Todd after the auction. The trial court charged the jury as follows: "If the contract is fraudulently, materially and intentionally altered or changed by a person who claims to benefit under the contract, such change or alteration voids and makes invalid the entire contract. The Court instructs you now that the alteration of the purchase agreement was and is a material alteration of the contract. Whether this resulted in injury or damage to the Plaintiff is a question for you to determine from all the evidence. Before an alteration in a written instrument will nullify the whole instrument, three things must be proven: the alteration must be material; it must have been made with the intent to defraud; and, it must have been made by a person claiming benefit under it. Unless all three things are proven, the contract as originally executed will be enforced. The Court instructs you that the alterations are material and you will observe that [the alterations' materiality] has been determined by the Court."

Price and Todd enumerate this charge as error. The Mitchells contend that the charge was authorized under the evidence and Code §§ 20-802 and 20-803. We agree that it was error for the trial court to give the instructions quoted above.

Clearly Code Ann. §§ 20-802 and 20-803 contemplate that the alteration must be "material." The typed-in phrase "& road right of way" is not a material alteration of the instant contract. A specifically designated plat of the property was incorporated by reference into and made a part of the contract. That plat further specifically provided that "This plat is subject to all easements and right of ways." Thus the "alteration" adds nothing more to the description of the property appearing on the face of the contract

than appears from the incorporated plat — that the property was subject to all rights of way including road rights of way. This "alteration" neither adds nor takes away from the description of the subject property. It is merely "surplusage" and not "material" in any meaning of the Code sections. *Phillips v. Hertz Comm. Leasing Corp.,* 138 Ga. App. 441 (226 SE2d 287) (1976). The "alteration" is not material for any reasons urged by the Mitchells.

The jury instructions were not authorized by the evidence. The charge had the prejudicial effect of authorizing the jury to find the contract unenforceable and void because of a material alteration even though there was no evidence to support such a finding. The charge was, under the facts of this case, erroneously given and requires the grant of a new trial. *Ga., Fla. & Ala. R. Co. v. Wells,* 36 Ga. App. 626 (137 SE 856) (1927).

3. The Mitchells sued for recovery of their $37,000 deposit, alleged to have been defrauded from them, plus interest. A recovery of interest on this amount was authorized under the evidence. *Phillips v. O'Neal,* 85 Ga. 142 (11 SE 581) (1890). See also *Printup v. Rome Land Co.,* 90 Ga. 180, supra (pleading for recovery of purchase price plus interest held good).

4. We find no abuse of discretion in the trial judge's allowing the Mitchells' counsel to ask leading questions of Mrs. Mitchell. Code Ann. § 38-1706. Nor do we find other evidentiary rulings of the trial judge to be erroneous for any reasons urged on appeal.

5. Except as discussed in Division 2 hereof, we find no reversible error in the trial judge's charge as given or in his refusal to give certain requested instructions.

6. Attorney fees were recoverable in this case. *McMichen v. Martin Burks Chevrolet,* 128 Ga. App. 482 (197 SE2d 395) (1973). However, we find a singular lack of probative evidence on this issue. " 'An attorney cannot recover for professional services without proof of their value.' [Cit.]" *Talley-Corbett Box Co. v. Royals,* 134 Ga. App. 769, 770 (216 SE2d 358) (1975); *Davis v. Glenville Haldi, P.C.,* 148 Ga. App. 842 (253 SE2d 207) (1979). Mrs. Mitchell's testimony as to the "approximate" cost to her of legal fees is insufficient. *Hoard v. Wiley,* 113 Ga. App. 328, 329 (2a) (147 SE2d 782) (1966); *Minit Chek Food Stores v. Plaza Capital,* 135 Ga. App. 110 (217 SE2d 415) (1975). It was error to enter judgment on the jury's award of attorney fees. *Willis-Wade Co. v. Lowry,* 144 Ga. App. 606 (241 SE2d 161) (1978). For a discussion of the suggested methods of proving attorney fees, see *Altamaha Convalescent Center v. Godwin,* 137 Ga. App. 394 (224 SE2d 76) (1976).

7. Other enumerations of error are not addressed as they are not likely to recur at the retrial which must be had for the reason

discussed in Division 2 of this opinion.

*Judgment reversed. Quillian, P. J., and Shulman, J., concur.*

Argued February 13, 1980 — Decided April 18, 1980 — Rehearings denied May 6, 1980 — ▮▮▮▮▮▮▮▮▮

*Nathaniel Daniel Wages,* for appellant (case no. 59358).

*William G. Tanner, J. L. Edmondson, T. Penn McWhorter, Dean Covington, J. Bryant Durham, Jr.,* for appellees.

*J. Bryant Durham, Jr., Dean Covington,* for appellant (case no. 59359).

*Nathaniel Daniel Wages, William G. Tanner, J. L. Edmondson,* for appellees.