70104, 70105. WALLER et al. v. SCHEER; and vice versa.

(332 SE2d 293)

BIRDSONG, Presiding Judge.

Scheer brought suit against Allan Waller, Allan Waller, Ltd., and East India Company for breach of warranty, fraud, and violation of the Fair Business Practices Act (FBPA) (OCGA § 10-1-390 et seq.) in the sale of a painting and an antique sari.

The evidence shows that in October 1980, Scheer answered a newspaper advertisement for sale of antique Chinese porcelain priced at $3,000. Scheer went to Waller's home, where Waller told Scheer the ad had been a mistake and that the intended sale price was $30,000. Scheer told Waller he was not interested in the porcelain, whereupon Waller showed Scheer a painting of Arabian horses which, according to Scheer, Waller said was by Adolf Schreyer, a nineteenth century German artist.

Waller also showed Scheer a photograph of an antique sari which, according to Scheer, Waller said contained a pound of pure gold woven in threads. Waller showed Scheer an *Atlanta Magazine* article in which the sari was depicted and described for sale at $5,000; at the time, the sari was in New York at Sotheby Park Bernet's auction house to be auctioned off with a reserve price of $2,500. Scheer also viewed some antique tapestries.

Waller denied that he warranted the painting and said he told Scheer he could not give a provenance and could not give a guarantee

as to the painting, but Waller showed Scheer an appraisal by one Paul Sternberg of Trosby's auction house on which were typed the words: "A superb example of the work of Adolf Schreyer." Sternberg appraised the painting at $22,000. Waller also, according to Scheer, told Scheer that Mr. David Ramus, an expert in 19th century paintings had given Waller a firm offer of $18,000 for the painting provided a guarantee was supplied. Waller told Scheer that similar Adolf Schreyer paintings had sold for $30,000-$40,000 and showed him an auction catalog to that effect. He also told Scheer that he had sent a photograph of the painting to Sotheby Park Bernet's for acceptance at auction and was waiting to hear from that establishment. Waller asked Scheer not to contact Sotheby's because it would ruin his reputation as a dealer if Sotheby's discovered Waller was "shopping" the painting behind its back. Waller testified, however, that when he first talked to Scheer he had not heard from Sotheby's whether it had made a decision, but that before the sale to Scheer he learned Sotheby's had rejected the painting for auction. Waller refused to let the painting out of the house but gave Scheer a color photograph of the painting at least two weeks before the sale; Scheer sent the photo to a friend in New York who he thought might be interested, but the friend declined.

According to Scheer, when he visited Waller's home again, Waller regaled Scheer with a description of his dire financial straits, particularly showing Scheer a returned $5,000 check written for escrow on real property, and complaining that his son's tuition to private school was in jeopardy. All of this supposedly went to explain why Waller wanted to hurriedly sell the painting, sari, porcelains, and tapestries for less than $24,000 instead of waiting to auction them off. Scheer testified that he knew both Ramus and Sternberg but never contacted them about the painting, and never called Sotheby's because of Waller's request that he not do so, and that he believed what Waller told him and had no reason to question the authenticity of the painting. He admitted he was gullible, and that his failure to call Sotheby's was, in hindsight, ridiculous.

Scheer testified further that he capitulated only after Waller's repeated importunings and bought the painting, sari, porcelain, and tapestries for $16,000, chiefly because he felt sorry for Waller. He stated that it appealed to the social worker in him that Waller, who lived in what Scheer thought was a magnificent $400,000 house with magnificent gardens, was in such pathetic, though temporary, financial straits. He was touched by Waller's story. He was trying to help Waller out. After purchasing the items, however, he had samples of thread from the sari assayed and learned it contained only a minute amount of gold, and he sent the photo of the painting to Sotheby's, which rejected the painting for auction. Thereupon Scheer sent Wal-

ler a letter rescinding the sale.

Waller testified that at all times he believed the painting to be an Adolf Schreyer, although he could not guarantee it, and that he threw the sari into the sale lot, or gave it away, because it had no gold. He sold "the whole mess" for $16,000, including $30,000 worth of porcelain and $5,000 worth of tapestries. (The sale figure ascribed to the painting was $10,000.) He denied telling Scheer the painting was in fact an Adolf Schreyer but said he told Scheer he believed the painting was "right"; he testified that the fact he sold the painting for the low price of $10,000 indicates his inability to guarantee it to Scheer.

An expert witness testified for Scheer that in his opinion the painting is not an Adolf Schreyer because the musculature of the horses is ill-defined. Paul Sternberg testified that he based his $22,000 appraisal on what Waller told him, and that he never typed on the appraisal "a superb example of the work of Adolf Schreyer." He appraised the sari at $6,500. David Ramus testified he had offered Waller $18,000 for the painting if it could be guaranteed as a Schreyer, but he was aware that the photo had been sent to Sotheby's for acceptance, and after Sotheby's rejected it for auction he became doubtful of its authenticity; he said the painting had value only as a decorative piece. Clive Howe, an expert witness for Waller, testified that at the time of trial, he had no reason to believe the painting is not genuine; that he believed the painting cannot be anything but an Adolf Schreyer or Schreyer studio work, and any difference in style is attributable to its having been painted during Schreyer's "loose" period. He did not believe it was a fake because a copier would have copied Schreyer's style more exactly. He explained that the fact a painting is rejected for auction by an auction house does not mean the painting is a fake but the painting may have been rejected because Sotheby's must take a conservative approach. He had seen the painting in Waller's home in 1968 and told Waller then the painting was an Adolf Schreyer. Mr. Howe testified that the painting, if genuine, would be worth $20,000-$24,000, but as a merely decorative piece it would be worth $6,000-$8,000.

After protracted discovery and trial, the jury returned a verdict on the fraud count for the painting only, for $13,000 actual damages, $3,000 punitive damages, and $25,000 attorney fees. Appellants, hereinafter referred to as Waller, cite 13 errors below and Scheer cross-appeals. *Held*:

### Case No. 70104 (Appeal of Waller)

1. Waller contends the trial court erred in denying summary judgment and directed verdict on the Fair Business Practices Act claim because the sale was not a consumer transaction in the market-

place but was a sale by private negotiation between two individual parties and did not constitute a harm to the general consuming public (*Zeeman v. Black*, 156 Ga. App. 82, 84 (273 SE2d 910)), and further that the sale was for resale and investment purposes and not for personal family or household purposes. OCGA § 10-1-392 (3). There is some equivocal evidence by Scheer that he bought the art for personal use; but nevertheless this sale was patently a private transaction and not governed by the FBPA. In *Zeeman*, supra, p. 84, we held that the FBPA "does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction. In those circumstances, even though the plaintiff may be a 'consumer' with regard to the transaction, if the deceptive or unfair act or practice had or has no potential for harm to the general consuming public, the allegedly wrongful act of the defendant was not made in the context of the consumer marketplace. Unless it can be said that the defendant's actions had or has potential harm for the consumer public the act or practice cannot be said to have 'impact' on the consumer marketplace and any 'act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA.' *State of Ga. v. Meredith Chevrolet*, 145 Ga. App. 8, 12 [244 SE2d 15]. When a 'consumer' suffers damage as the result of an unfair or deceptive act or practice which had or has potential impact solely upon him and which is not and could not be a source of damage to any other member of the consuming public, there is no public interest to be served by proceeding under the FBPA, and the aggrieved party is relegated to pursuit of relief under other statutory or common law principles." Accordingly, the trial court erred in refusing Waller a directed verdict with regard to the FBPA count.

2. Waller contends the trial court erred in granting Scheer a motion in limine precluding Waller from introducing evidence of Scheer's experience and status as a knowledgeable and active dealer, investor and collector of various kinds of valuable objects, including diamonds, jewels, art, guns, antiques and other objects d'art. We agree that the trial court committed error and reverse the case on this basis. The plaintiff's evidence in this case was to a material degree directed towards the depiction of an intentional fraud upon an inexperienced and unsuspecting individual. The law is clear that Scheer was under an express duty to exercise reasonable diligence and ordinary prudence in ascertaining the truth and to make proper inquiry, without relying on Waller who owed him no confidentiality. *Cawthon Motor Co. v. Scheufler*, 153 Ga. App. 282, 289 (265 SE2d 96). We find evidence that Scheer was an experienced dealer and investor in collectibles to be highly relevant to the question of his diligence and prudence in this transaction, particularly in the face of evidence that he knew both of the experts, Sternberg and Ramus, who Waller had said

authenticated the painting as genuine, but did not consult them; that he was given a photograph of the painting two weeks before he purchased the painting but did not attempt to verify it before purchase; and that it was clear to him that Waller was selling the painting to him for $10,000 while turning down an offer by Ramus of $18,000 conditioned upon a guarantee, and that Scheer bought the whole lot of art objects valued at over $60,000 for $16,000 because, although it was obvious to him that Waller lived magnificently, he believed Waller needed the money. The rejected evidence is not irrelevant to the issues in the case (see OCGA § 24-2-1), but goes directly to the question whether Scheer exercised due diligence, in light of the facilities at his command and his own knowledge and experience as a dealer and collector. *Hancock v. Gunter*, 195 Ga. 646, 651 (24 SE2d 772); see also *Mosely v. Johnson*, 90 Ga. App. 165, 166 (82 SE2d 163). Since the evidence does not demand a verdict for Scheer, we cannot say the exclusion of evidence of his own experience was harmless. See *Cawthon Motor Co.*, supra. As to admissibility of evidence generally, see *Calhoun v. Branan*, 149 Ga. App. 160, 161 (253 SE2d 838).

3. Waller contends the trial court erred in not requiring Scheer to elect between the fraud claim and the breach of warranty claim prior to submission of the case to the jury. Waller cites *Allen Housemovers v. Allen*, 135 Ga. App. 837, 839 (219 SE2d 489), which is not on point. Scheer was not required to elect his remedy prior to submission of the case to the jury, but would be required to elect if inconsistent verdicts had been rendered. *Rosenberg v. Mossman*, 140 Ga. App. 694, 697 (231 SE2d 417). He could pursue any number of inconsistent remedies prior to formulation and entry of judgment. *Rosenberg*, supra; *UIV Corp. v. Oswald*, 139 Ga. App. 697, 698-699 (229 SE2d 512); OCGA § 9-11-8 (e) (2). See also OCGA § 11-2-721. Waller argues elsewhere in his brief, though he does not enumerate it as error, that Scheer's rescission of the contract of sale precludes him from seeking damages for fraud and likewise also precludes him from recovery for breach of warranty. However, OCGA § 11-2-721 provides: "Remedies for material misrepresentation or fraud include all remedies available under this article for nonfraudulent breach. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy." OCGA § 11-2-720 provides: "Unless the contrary intention clearly appears, expressions of 'cancellation' or 'rescission' of the contract or the like shall not be construed as a renunciation or discharge of any claim in damages for an antecedent breach." See also *City Dodge v. Gardner*, 232 Ga. 766, 768 (208 SE2d 794).

4. Waller urges error on the trial court's charge in seven enumerations of error. Upon review, we find that enumerations of error 7-13

are meritorious, but in view of the reversal of the case, we find it unnecessary to discuss them, being satisfied any such errors will not be repeated on retrial.

5. We find no reversible error in the manner in which the verdict was received, and the evidence fully supports the verdict. However in any case, the issue is moot in view of the reversal of the case.

6. In enumeration 14, appellant contends the trial court "erred in not giving Charge 36 that remote or consequential damages are not recoverable unless they are capable of exact computation and defendant's Charge 42 that damages cannot be based on guesswork." The appellant's brief does not coincide with this enumeration; but we will assume appellant refers to the attorney fees award, which he expansively contends was not supported by any records and documents of Scheer's attorney. Appellant contends the award must be written off because the attorney's evidence provided only an "approximate" assessment of the time spent on the case; Waller cites *Price v. Mitchell*, 154 Ga. App. 523 (268 SE2d 743). The plaintiff's attorney in this case testified in detail concerning the history of the case and all his labors in it. He testified that he had failed to keep accurate time receipts for all time spent, but he testified to the number of hours spent on the case and explained his hourly fee. See *Altamaha Convalescent Center v. Godwin*, 137 Ga. App. 394 (224 SE2d 76.) We know of no authority which would deny attorney fees because the attorney did not keep written time records for every hour spent on the case. *Price*, supra, and *First Bank of Clayton County v. Dollar*, 159 Ga. App. 815 (285 SE2d 203), cited by appellant, denied recovery where the party, not the attorney, testified as to his or her "approximate" legal expenses. However, the issue in this case is moot in view of the reversal.

7. We find it worthwhile to point out that appellant's brief is woefully short of the requirements for appeal under our rules. In most instances, the brief does not discuss the enumerations of error as named, does not follow any coherent order, fails to argue some enumerations altogether, argues some issues which are not enumerated, or argues in such confusion as to make it near impossible to "correlate the errors enumerated to the arguments and citations of authority in the brief." Rules of the Court of Appeals, Rule 15 (a) (2). The Rules mandate that the sequence of argument shall follow generally the order of the enumeration of errors and shall be numbered accordingly. Rules of the Court of Appeals, Rule 15 (c) (1). We have, according to the spirit and intent of the Rules, based this decision upon the enumerations of error and not the chronology of argument. Any alleged error not so addressed by this opinion is deemed abandoned by appellant.

*Case No. 70105 (Cross-Appeal of Scheer)*

In his cross-appeal, Scheer enumerates 13 errors. Although the verdict in Scheer's favor is reversed, we decide these enumerations for purposes of instruction on retrial. *Held*:

1. Scheer contends the trial court erred in its failure to admit in evidence advertisements in the Atlanta newspaper and *Atlanta Magazine* concerning the sari. Scheer contends this evidence was relevant to prove an FBPA claim by showing the medium and manner in which the sari entered the marketplace. See *State of Ga. v. Meredith Chevrolet*, supra, p. 19. However Scheer clearly did not come to Waller because of such advertisements but approached Waller because of the advertisement of the porcelains, which are not a subject in this suit.

2. Enumerations 3-8 concern Scheer's claim under the FBPA. These enumerations are rendered moot because the purchases here were not "consumer transactions" governed by the Act. *Zeeman*, supra.

3. The trial court did not commit reversible, i.e., harmful error in charging on principles of breach of contract. If not quite precise, none of the charge on contract breach was irrelevant to this case, nor did it in high probability contribute to the judgment. *Kirkland v. State*, 141 Ga. App. 664 (234 SE2d 133). Moreover, Scheer does not specify what charges he refers to in contending the trial court erred in giving "all defendant's jury charges which went to breach of contract." See Rules of the Court of Appeals, Rule 15 (c) (3).

4. There is no evidence of a confidential relationship between the parties in this case so as to authorize jury charges on confidential relations as they affect fraud.

5. The trial court did not err in allowing cross-examination of Scheer as to his personal checking accounts. As we earlier held, evidence of Scheer's experience and status as a dealer of valuable art objects and collectibles is highly relevant to the question of his exercise of due diligence. In addition, Scheer testified that his transaction with Waller represented a lot of money to him and generally sought to imply that his purchase of art objects and collectibles from Waller represented an isolated transaction, a naiveté outside the realm of his experience as a government employee. The evidence objected to tended to prove otherwise and was properly admitted, however small might be its probative value. OCGA § 24-2-1. *Fuller v. State*, 196 Ga. 237 (26 SE2d 281).

6. The trial court did not err in dismissing from the case, as a party, appellant Waller's wife. There was no evidence she participated in any part of the sale transaction between Waller and Scheer.

8

*Judgment reversed. Carley and Sognier, JJ., concur in the judgment only.*

DECIDED APRIL 23, 1985 —
REHEARING DENIED MAY 31, 1985 —

*A. Lee Parks, Jr.,* for appellants.
*Paul K. Tamaroff,* for appellee.