### 70989. MASSEY v. STEMBRIDGE et al.
(341 SE2d 247)

POPE, Judge.

Appellant Shirley K. Massey brought this action against appellees William Asbury Stembridge, Jr. and Clark Memorials, Inc. d/b/a Thomaston Burial Vault and Monument Company alleging fraud and conversion stemming from a contract to purchase a burial monument. This appeal arises from the trial court's grant of appellees' motion for summary judgment.

The evidence of record shows the following chronology of events. On September 10, 1982 Lee Morris, as agent for appellees, visited appellant for the purpose of selling her a monument to be placed over the grave of her deceased husband, who died on August 31, 1982. Morris was accompanied by Chuck McCracken, an employee of the funeral home which had buried the deceased. On that date appellant signed a contract to purchase the monument from appellee Clark Memorials, Inc. The first page of the contract contained a description of the monument to be erected and the purchase price thereof. The con-

tract indicated no down payment and "Balance Due on Erection $1674.40." As is here pertinent, the second page of the contract contained the following language: "CONDITIONS: This order contains in writing and printed matter the entire contract between the buyer and the seller, and is subject to acceptance by the Company and the buyer has notice that no salesman or agent for CLARK MEMORIALS, INC. has authority to bind the Company by any agreement not herein contained nor to alter the contract after it has been accepted by the Company . . . It is agreed that the above named property is and shall remain the property of CLARK MEMORIALS, INC. until paid for in full and that the said CLARK MEMORIALS, INC., its agents or attorneys, may enforce the collection of the purchase price by law . . . or may enter upon the cemetery plot of anyone holding or claiming such monument . . . and remove the same from the cemetery either with or without legal process, and in such event the buyer . . . recognizing the seller has incurred certain expenses, such as salesman's commissions, materials, overhead, legal and sheriff's expenses, any amount previously paid under this contract shall be considered as liquidated damages." Both pages of the contract were signed by appellant, although she admits she did not read them prior to signing. A few days later appellant received a typed confirmation of her order.

According to appellant, "When Mr. Morris and I were talking about this monument and I told him that I still did not think [I] could afford it, he [said,] 'This is a good deal; you ought to get it now.' So as I told him at the time, [I] didn't know what kind of insurance [I'd] have, that when it was settled, I would pay him $200 down and $50 a month and that was our agreement." However, having received more insurance benefits than anticipated, appellant made a $500 down payment in December 1982. Appellees then commenced work on the monument, and the finished product was placed on the grave site on January 13, 1983.

Sometime prior to March 15, 1983 appellees were notified that appellant was not entirely satisfied with the monument. Additional work was done on the monument in accordance with appellant's request. On May 3, 1983 appellee Stembridge met with appellant at her home, and appellant indicated her satisfaction with the additional work. At that meeting appellant presented Stembridge a $50 check, which was accepted and eventually negotiated by appellees. According to Stembridge, this was the first time he became aware of the $50-a-month payment arrangement appellant made with Morris, appellees' agent. Stembridge testified: "I said I was not aware of it, that we normally did not make installment plans to go more than 12 months. Therefore, I did not know if this would be suitable. I would have to go back and see, but I would like to work with her because I understood she was sick and this is not uncommon that we follow behind several

large bills, hospital bills, funeral bills, and we try to do what we can even though I would say less than one percent of all our contracts have any type of payment plan[,] a scheduled payment plan at all, but I would agree to try to do something but I could not, did not, feel that at that point in time I [could] live up to the $50 because I felt like that would drag it out more than 12 months."

On May 12, 1983 Stembridge wrote appellant: "Now that your memorial work has been placed to your satisfaction, I feel it is necessary to put in writing your payment schedule. When Mr. Morris sold the memorial to you and I later talked with you at your home, a monthly installment plan was discussed. We normally do not make these arrangements, but Mr. Morris's concern for your financial situation at the time felt this was necessary. Our normal payment plan consists of one-half the purchase price paid as a downpayment and the balance due after completion. I now have reliable information that you and/or your family have the funds necessary to pay off the memorial in full. We have acted in good faith in building and erecting your memorial and I feel you must do the same. You now have two alternatives in which to pay. You may pay the full balance by June 1 . . . or pay 12 monthly installments of $110.62 on the first of each month beginning June 1. This installment plan carries an interest rate of 18% [which will be added to the amount owed.] . . . I feel sure one of the two alternatives above will be suitable to you. I look forward to hearing from you." (Indention omitted.) By letter dated June 13, 1983 Stembridge advised appellant that appellees retained title in the monument until payment in full. She was notified that if payment in full was not received by July 1, 1983, the monument would be repossessed. On July 5, 1983 appellant wrote a letter to appellees and enclosed a check for $100, explaining that this was all she could afford, that she would like to keep the monument but could only afford to pay by the month; the check was negotiated by appellees. By letter of July 18, 1983 appellees notified appellant that they had repossessed the monument and would hold it for 30 days during which she could reclaim it by payment in full plus a 10% installment charge.

1. Construed liberally appellant's complaint sets forth a cause of action for the tort of fraud, alleging misrepresentations by appellees' agent and seeking to void (in effect, to rescind) the contract as a result of same. On the basis of the record as set forth above, appellees have failed to establish that there is no genuine issue as to any material fact and that they are entitled to a judgment as a matter of law. Appellees rely on the terms and conditions cited above of the contract between the parties as precluding appellant's reliance on any oral promises made by their agent Morris inconsistent therewith. However, this issue is controlled adversely to appellees by the holding in

*City Dodge, Inc. v. Gardner*, 232 Ga. 766, 770 (208 SE2d 794) (1974): "[T]he question of reliance on the alleged fraudulent misrepresentation in tort cases cannot be determined by the provisions of the contract sought to be rescinded but must be determined as a question of fact by the jury. It is inconsistent to apply a disclaimer provision of a contract in a tort action brought to determine whether the entire contract is invalid because of alleged prior fraud which induced the execution of the contract. If the contract is invalid because of the antecedent fraud, then the disclaimer provision therein is ineffectual since, in legal contemplation, there is no contract between the parties. In this case, parol evidence of the alleged misrepresentation [is] admissible on the question of fraud and deceit. [If] the antecedent fraud [is] proven to the satisfaction of the jury, it vitiate[s] the contract. . . . [T]he Uniform Commercial Code . . . does not preclude an action in tort based upon fraudulent misrepresentation inducing the sale where the plaintiff proves by a preponderance of the evidence the elements of fraud and deceit recognized under Georgia law, and . . . such a tort action cannot be controlled by the terms of the contract itself." See *Price v. Mitchell*, 154 Ga. App. 523 (1) (268 SE2d 743) (1980). Compare *McGuire v. Winkler*, 167 Ga. App. 104 (1) (306 SE2d 70) (1983), and cits., and *Kot v. Richard P. Rita Personnel &c.*, 134 Ga. App. 438 (214 SE2d 690) (1975), wherein no rescission of the respective agreements occurred. Accordingly, the trial court erred in granting appellees' motion for summary judgment as to this claim.

2. On the basis of the record on appeal, we find that the trial court also erred in granting summary judgment to appellees on appellant's claim of conversion of a government marker issued to her as the widow of the deceased by the Veterans Administration and allegedly taken from the grave site by appellees when they repossessed the monument.

3. In light of our holdings in the foregoing divisions of this opinion, appellant's remaining enumeration of error is moot.

*Judgment reversed. Deen, P. J., and Beasley, J., concur.*

DECIDED JANUARY 28, 1986 —
REHEARING DENIED FEBRUARY 13, 1986 —

*Margaret C. Johnson*, for appellant.
*William C. Harris, Thomas F. Richardson*, for appellees.